UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CATHOLIC CHARITIES
WEST MICHIGAN,

     Plaintiff,

v.

MICHIGAN DEPARTMENT
OF HEALTH AND HUMAN
SERVICES; ROBERT GORDON, in
his official capacity as Director
of the Michigan Department of
Health and Human Services;
MICHIGAN CHILDREN'S
SERVICES AGENCY; JENNIFER
WRAYNO, in her official capacity as
Acting Executive Director of
Michigan Children's Services Agency;
DANA NESSEL, in her official
capacity as Attorney General of
Michigan.

     Defendants.

_____/

No. 2:19-CV-11661-DPH-DRG

HON. DENISE PAGE HOOD

HON. DAVID R. GRAND

**DEFENDANTS' MOTION TO
DISQUALIFY PLAINTIFF'S
COUNSEL**

James R. Wierenga (P48946)
Attorney for Plaintiff
David, Wierenga & Lauka, PC
99 Monroe Ave., NW
Ste. 1210
Grand Rapids, MI 49503
(616) 454-3883
jim@dwlawpc.com

David A. Cortman (GA Bar #188810)
Attorney for Plaintiff
Alliance Defending Freedom
1000 Hurricane Shoals Rd. NE
Ste. D-1100
Lawrenceville, GA 30043
(770) 339-0774
dcortman@ADFlegal.org

Roger Brooks (NC Bar #16317)*
Jeremiah Galus (AZ Bar #030469)*
Attorneys for Plaintiff
Alliance Defending Freedom
15100 N. 90th Street
Scottsdale, AZ 85260
(480) 444-0020
rbrooks@ADFlegal.org
jgalus@ADFlegal.org

*Application for admission
forthcoming

Toni L. Harris (P63111)
Joshua S. Smith (P63349)
Precious S. Boone (P81631)
Elizabeth R. Husa Briggs
(P73907)
Attorneys for Defendants
Michigan Department of
Attorney General
Health, Education & Family
Services Division
P.O. Box 30758
Lansing, MI 48909
(517) 335-7603
HarrisT19@michigan.gov
Smithj46@michigan.gov

_____/

## DEFENDANTS' MOTION TO DISQUALIFY PLAINTIFF'S COUNSEL

Defendants Dana Nessel, Michigan Department of Health and Human Services (MDHHS), Robert Gordon, Michigan Children Services Agency (MCSA), and JooYuen Chang,[1] (collectively, Gordon and Chang are referred to as the "MDHHS Officials") hereby move this Court to disqualify Plaintiff's counsel pursuant to Rules 1.9, 1.10, and 1.11 of the Michigan Rules of Professional Conduct (MRPC).  Pursuant to Local Rule 7.1(a), the undersigned contacted Plaintiff's counsel via several email exchanges between May 20, 2019, and June 12, 2019, to ascertain

---

[1] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, this reflects the substitution of Children's Services Agency Executive Director JooYuen Chang for former Acting Children's Services Agency Executive Director Jennifer Wrayno, who was named in her official capacity.

whether this motion would be opposed.  Plaintiff's counsel stated his

opposition to it in responsive emails.

Respectfully submitted,

Dana Nessel
Attorney General

/s/ Joshua S. Smith
Joshua S. Smith (P63349)
Toni L. Harris (P63111)
Precious S. Boone (P81631)
Elizabeth R. Husa Briggs
(P73907)
Assistant Attorneys General
Attorneys for Defendants
Health, Education & Family
Services Division
P.O. Box 30758
Lansing, MI  48909
(517) 335-7603
Smithj46@michigan.gov

Dated:  June 12, 2019

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CATHOLIC CHARITIES
WEST MICHIGAN,

      Plaintiff,

                                    No. 2:19-CV-11661-DPH-DRG

v.

                                      HON. DENISE PAGE HOOD

MICHIGAN DEPARTMENT
OF HEALTH AND HUMAN           MAG. DAVID R. GRAND
SERVICES; ROBERT GORDON, in
his official capacity as Director
of the Michigan Department of
Health and Human Services;
MICHIGAN CHILDREN'S
SERVICES AGENCY; JENNIFER     **DEFENDANTS' BRIEF IN**
WRAYNO, in her official capacity as   **SUPPORT OF MOTION TO**
Acting Executive Director of        **DISQUALIFY PLAINTIFF'S**
Michigan Children's Services Agency;           **COUNSEL**
DANA NESSEL, in her official
capacity as Attorney General of
Michigan.

      Defendants.

_____/

James R. Wierenga (P48946)
Attorney for Plaintiff
David, Wierenga & Lauka, PC
99 Monroe Ave., NW
Ste. 1210
Grand Rapids, MI 49503
(616) 454-3883
jim@dwlawpc.com

David A. Cortman (GA Bar #188810)
Attorney for Plaintiff
Alliance Defending Freedom
1000 Hurricane Shoals Rd. NE
Ste. D-1100
Lawrenceville, GA 30043
(770) 339-0774
dcortman@ADFlegal.org

Roger Brooks (NC Bar #16317)*
Jeremiah Galus (AZ Bar #030469)*
Attorneys for Plaintiff
Alliance Defending Freedom
15100 N. 90th Street
Scottsdale, AZ 85260
(480) 444-0020
rbrooks@ADFlegal.org
jgalus@ADFlegal.org

*Application for admission
forthcoming
_____/

Toni L. Harris (P63111)
Joshua S. Smith (P63349)
Precious S. Boone (P81631)
Elizabeth R. Husa Briggs
(P73907)
Attorneys for Defendants
Michigan Department of
Attorney General
Health, Education & Family
Services Division
P.O. Box 30758
Lansing, MI 48909
(517) 335-7603
HarrisT19@michigan.gov
Smithj46@michigan.gov

## DEFENDANTS' BRIEF IN SUPPORT OF MOTION
## TO DISQUALIFY PLAINTIFF'S COUNSEL

Dana Nessel
Attorney General

/s/ Joshua S. Smith
Joshua S. Smith (P63349)
Toni L. Harris (P63111)
Precious S. Boone (P81631)
Elizabeth R. Husa Briggs
(P73907)
Assistant Attorneys General
Attorneys for Defendants
Health, Education & Family
Services Division
P.O. Box 30758
Lansing, MI  48909
(517) 335-7603
Smithj46@michigan.gov

Dated:  June 12, 2019

# TABLE OF CONTENTS

<u>Page</u>

Table of Contents ..................................................................................i

Index of Authorities...........................................................................ii

Concise Statement of Issues Presented ....................................iv

Controlling or Most Appropriate Authority.............................v

INTRODUCTION................................................................................1

Statement of Facts ...........................................................................4

Argument...............................................................................................9

I.   The Michigan Rules of Professional Conduct require this
     Court to disqualify Plaintiffs' counsel because there is an
     unexcused conflict of interest............................................................9

   A.   Bursch's association with the ADF law firm
        disqualifies it from representing Plaintiff Catholic
        Charities in this lawsuit. ................................................10

      1.   The Rules of Professional Conduct prohibit ADF
           from representing Plaintiff in this claim against a
           former client. ..................................................................11

      2.   *Dumont* is a substantially related litigation. ..............12

   B.   Bursch received confidential information through his
        representation of the MDHHS Officials in *Dumont*.............13

   C.   Bursch's conflict is imputed to all ADF attorneys................15

   D.   ADF's May 6, 2019 Letter does not evidence a timely or
        effective screen. ......................................................................17

Conclusion and Relief Requested...........................................................22

i

# INDEX OF AUTHORITIES

Page

**Cases**

*Analytica, Inc. v NPD Research, Inc.*
  708 F.2d 1263 (7th Cir. 1983) .............................................................. 16

*Anchor Packing Co. v. Pro-Seal, Inc.,*
  688 F. Supp. 1215 (E.D. Mich. 1988) ............................................ 12, 14

*Avink v. SMG,*
  761 N.W.2d 826 (Mich. Ct. App. 2009) ................................................ 16

*Barkley v. City of Detroit,*
  514 N.W.2d 242 (Mich. App. 1994) ...................................................... 12

*Cobb Publishing v. Hearst Corporation,*
  907 F.Supp. 1038 (E.D. Mich. 1995) .................................................... 20

*Country Mill Farms, LLC v. City of East Lansing,*
  280 F.Supp.3d 1029 (W.D. Mich. 2017) ................................................. 8

*Debiasi v. Charter County of Wayne,*
  284 F. Supp.2d 760 (E.D. Mich. 2003) ................................................. 10

*Dumont v. Lyon,*
  Case No. 2:17-cv-13080 (E.D. Mich. 2017).......................................... 4, 9

*El Camino Res. LTD. V. Huntington Nat'l Bank,*
  623 F.Supp.2d 863 (W.D. Mich. 2007) ................................................... 9

*Fulton v. City of Philadelphia,*
  922 F.3d 140 (3d Cir. 2019).......................................................... 8, 15

*In re Ralph Roberts Realty, LLC,*
  500 B.R. 862 (Bankr. E.D. Mich. 2013)................................................ 10

*Manning v. Warring, Cox, James, Skylar, & Allen,*
  849 F.2d 222 (6th Cir. 1988) ............................................................. 10

*Musicus v. Westinghouse Electric Corp.,*
    621 F.2d 742 (5th Cir. 1980) ............................................................... 10

*Nat'l Union Fire Ins. Co. v. Alticor, Inc.,*
    466 F.3d 456 (6th Cir. 2006) ............................................................... 12

*Nathan v. Shea (In re Marks & Goergens),*
    199 B.R. 922 (E.D. Mich. 1996)........................................................... 14

*United States Football League v. Nat'l Football League,*
    605 F. Supp. 1448 (S.D.N.Y. 1985) ..................................................... 12

## Rules

MRPC 1.09............................................................................................... 2

MRPC 1.10............................................................................................... 2

MRPC 1.11............................................................................................. 18

MRPC 1.11(d)(1) ................................................................................... 19

## CONCISE STATEMENT OF ISSUES PRESENTED

1.    The Michigan Rules of Professional Conduct require this Court to disqualify Plaintiffs' counsel because there is an unexcused conflict of interest.

# CONTROLLING OR MOST APPROPRIATE AUTHORITY

*Authority*:

Michigan Rules of Professional Conduct 1.9
Michigan Rules of Professional Conduct 1.10
Michigan Rules of Professional Conduct 1.11
*Debiasi v. Charter County of Wayne,* 284 F. Supp.2d 760, 770 (E.D. Mich. 2003)
*Manning v. Warring, Cox, James, Skylar, & Allen*, 849 F.2d 222, 225-26 (6th Cir. 1988)
*Anchor Packing Co. v. Pro-Seal, Inc.,* 688 F. Supp. 1215, 1220-21 (E.D. Mich. 1988)
*Nathan v. Shea (In re Marks & Goergens)*, 199 B.R. 922, 925 (E.D. Mich. 1996)
*Analytica, Inc. v NPD Research, Inc.*, 708 F.2d 1263, 1267 (7th Cir. 1983)
*Cobb Publishing v. Hearst Corporation*, 907 F.Supp. 1038, 1048-49 (E.D. Mich. 1995)

## INTRODUCTION

In August 2018, John Bursch had just signed an amended contract to continue to serve as lead counsel representing the MDHHS Officials in *Dumont v. Lyon,* Case No. 2:17-cv-13080, in which the plaintiffs alleged that the MDHHS Officials permitted a practice of allowing MDHHS's contracted child placing agencies (CPAs) to discriminate against LGBTQ couples and individuals for religious reasons. Bursch was defending MDHHS Officials against those allegations when he put on his second hat, as Vice President of Appellate Advocacy at the Alliance Defending Freedom (ADF)[2] law firm. In this role, he represented ADF and helped author an amicus brief, which advocated a position contrary to what MDHHS Officials would ultimately take in *Dumont*. More importantly, several months after Bursch took the position at the ADF law firm, ADF agreed to represent Plaintiffs Catholic Charities in this lawsuit *against* MDHHS, challenging a Consent Decree entered in *Dumont* in which the MDHHS Officials

---

[2] See https://www.adflegal.org/detailspages/biography-details/john-bursch. Last accessed June 11, 2019.

1

agreed to maintain and enforce the non-discrimination provisions in the CPA contracts.

At the time he joined ADF, Bursch had access to thousands of documents containing confidential MDHHS information gathered through discovery in the *Dumont* litigation, and he participated in confidential client meetings during which additional information was shared.  Bursch's prior representation of the MDHHS Officials in *Dumont* disqualifies him from representing Plaintiff in this matter, and such conflict is imputed to all attorneys at ADF.  Mich. Rules Prof'l Conduct 1.09, 1.10.

While ADF claims that it erected a conflict screen, it was not put in place until several months *after* Bursch joined ADF, while the parties in *Dumont* were engaged in extensive discovery.  No notice was provided to the MDHHS Officials, MDHHS, or the Department of Attorney General, despite the fact that Bursch's representation was pursuant to contract through which he served as a Special Assistant Attorney General (SAAG).  This Contract includes agreements to avoid conflicts of interests absent prior written approval from MDHHS.  (Ex. A, ¶ 5.2.)  But ADF failed to notify either the MDHHS Officials or the

2

Department of Attorney General of ADF's representation of the present Plaintiff and any effort to screen Bursch from this matter until *after* this lawsuit was filed, via letter dated May 6, 2019.  Such notice was ineffective and untimely.

This Court has both the authority and an obligation to disqualify the ADF law firm.  The paramount concern in situations like this, where an attorney and, indeed, an entire law firm has switched sides, is to protect client confidences and avoid the appearance of impropriety. ADF and their local counsel, David, Wierenga & Lauka P.C., cannot alleviate these concerns.  This Court should disqualify them from representing Plaintiff in this case and provide 30 days for Plaintiff to find new counsel or dismiss this lawsuit.

## STATEMENT OF FACTS

On November 20, 2017, Bursch signed a contract with the
Michigan Department of Attorney General (AG) whereby he committed
to provide legal services to the Michigan Department of Health and
Human Services (MDHHS) in *Dumont v. Lyon,* Case No. 2:17-cv-13080
(E.D. Mich. 2017) (SAAG Contract, Ex A, ¶ 1.2.)

Both *Dumont* and the present litigation involve the
nondiscrimination clause in MDHHS' standard contract with private
CPAs and its applicability to private agencies objecting on religious
grounds to the provision of services to LGBTQ individuals or couples.
The plaintiffs in *Dumont* challenged MDHHS's alleged "practice of
permitting state-contracted and taxpayer-funded child placing agencies
to use religious criteria to screen prospective foster and adoptive
parents for children in the foster care system and to turn away qualified
families on the basis of sexual orientation." (*Dumont* Cplt.*,* No. 2:17-cv-
13080, Doc. 1, Pg. ID 1, Ex. F.)

*Dumont* was resolved through a Consent Decree, entered on
March 22, 2019, by Judge Paul Borman of the United States District
Court for the Eastern District.  The Stipulated Order dismissed *Dumont*

"with prejudice pursuant to the terms of the Settlement Agreement,"
with Judge Borman retaining jurisdiction over enforcement.  (*Dumont*
Order on Stipulation of Dismissal, No. 2:17-cv-13080, Doc. 83, Pg. ID
1469, Ex. G.)  The Consent Decree requires that MDHHS's standard
contracts with CPAs continue to include a Non-Discrimination
Provision that precludes, among other things, any contracted, licensed
CPA from turning away or sending a potentially qualified LGBTQ
individual or same-sex couple to another licensed CPA for services
under the contract including orientation, training, and home studies.
(*Dumont* Consent Decree, Ex. H.)  It also requires MDHHS to enforce
the Non-Discrimination Provision against any CPA that is determined
to be in violation of such provision "up to and including termination of
the Contracts." (*Id.* at Pg. ID 1446.)

The *Dumont* Consent Decree forms the heart of the present
lawsuit.  Catholic Charities claims that, after the Consent Decree was
entered in *Dumont,* MDHHS "sent a directive to Michigan's child
placing agencies, including Catholic Charities, purporting to implement
the *Dumont* settlement" that purportedly "forces faith-based providers
that believe marriage is between a man and a woman to abandon or

5

violate that belief as a condition to receiving government contracts."
(Doc. 1-2, Pg. ID 46-47, ¶¶ 131, 135.)   Plaintiff claims that Defendants,
through this "new policy" are violating its rights under the state and
federal constitution, as well as Michigan law.  (Doc. 1-2, Pg. ID 51-62,
¶¶ 156-232.)   Plaintiff seeks a preliminary and permanent injunction,
as well as monetary damages to remedy the alleged violations.  (Doc. 1-
2, Pg. ID 62-63.)

       MDHHS compensated Bursch well for his services in *Dumont*.  He
received $558 per hour, which totaled more than $60,000 during
approximately a 14-month period.

       Both as a member of the Bar and by signing the SAAG Contract,
Bursch agreed that his work would be governed by the "Rules of
Professional Conduct applicable to members of the Michigan Bar
Association." (Ex. A, ¶ 5.10.)  He also agreed that his work was, and
would continue to be, free from conflicts.  Specifically, Bursch agreed
not to "undertake representation against the State of Michigan if the
representation is related to the subject matter of th[e] Contract and
would require [Bursch] to take a position adverse to the State" absent
the AG's prior, written approval.  (Ex. A, ¶ 5.2.)

                                     6

The commitment to avoiding conflicts extended to "other lawyers" in Bursch's firm, who were to "be advised of [Bursch's] representation of the Department [of Attorney General]" and who  "agreed not to accept, without prior written approval from the [AG] any employment from other interests related to the subject matter of [the] Contract." (*Id.*)  No mention is made of any affiliation, much less employment or acceptance of an executive position, by ADF.  The only firm identified in the SAAG Contract is Bursch Law, PLLC, and it agreed to "carefully monitor any significant change in assignments or clients of the firm in order to avoid any situation which might affect [Bursch's] ability to effectively render legal services." (*Id.*)  Bursch signed a First Amendment to the SAAG Contract on August 16, 2018.  (Ex. B.)

When Bursch signed the First Amendment to the SAAG Contract in August 2018, he had apparently joined ADF, the law firm that now represents Plaintiff Catholic Charities in this lawsuit as its the Vice President of Appellate Advocacy.  (John Bursch Resume, available at linkedin.com/in/appellate, Ex. I.)

ADF filed an amicus brief in *Dumont* on January 30, 2018.  (*Dumont* ADF Amicus, Ex. D.)  And on September 4, 2019, Bursch

joined other ADF attorneys in an amicus brief filed in *Fulton v. City of Philadelphia,* 922 F.3d 140 (3d Cir. 2019), a case involving similar allegations brought by Catholic Social Services in Philadelphia. (Ex. E.)

The Department had no knowledge that Bursch took a position at ADF while representing MDHHS Officials under the SAAG Contract. Three attorneys representing Plaintiff Catholic Charities are attorneys directly associated with ADF.  In addition, Attorney James Wierenga, the local counsel of record, is described as an "ADF-allied attorney" in a press release published on ADF's website.[3]  This press release describes ADF's representation in a pending federal case, for which Wierenga served as "local counsel."  Bursch worked with Wierenga on this case, as he is one of two ADF attorneys identified as available to meet with the press to discuss it.[4]

---

[3] News Release, Alliance Defending Freedom, Michigan Farmer to Court: Stop City's Religious Hostility, Let Me Sell Food to Everyone (Apr. 10, 2019), https://www.adflegal.org/detailspages/press-release-details/michigan-farmer-to-court-stop-city-s-religious-hostility-let-me-sell-food-to-everyone.  Last accessed June 11, 2019.

[4] Indeed, both Bursch and Wierenga are listed as counsel for plaintiffs in *Country Mill Farms, LLC v. City of East Lansing*, 280 F.Supp.3d 1029, 1037 (W.D. Mich. 2017).

It was not until May 6, 2019, several months after the SAAG

Contract was terminated and after ADF filed this complaint, that ADF

first prepared a letter to Defendants Gordon and Chang, notifying them

that John Bursch had been screened from this case.  The letters were

received by the Department on May 10, 2019.  (Ex. C.)


**ARGUMENT**

I.    **The Michigan Rules of Professional Conduct require this
      Court to disqualify Plaintiffs' counsel because there is an
      unexcused conflict of interest.**

This Court must disqualify the ADF law firm and its local counsel

from representing Plaintiff Catholic Charities because John Bursch,

ADF's Vice President of Appellate Advocacy, the MDHHS Officials in

*Dumont v. Lyon*, a substantially related matter to the present case,

represented mere months before this Complaint.  This conflict has not

been excused and is imputed to both the ADF firm and allied attorneys

such as David, Wierenga & Lauka, P.C.

"The power to disqualify an attorney from a case is incidental to

all courts and is necessary for the preservation of decorum, and for the

respectability of the profession." *El Camino Res. LTD. V. Huntington

Nat'l Bank,* 623 F.Supp.2d 863, 875-76 (W.D. Mich. 2007) (internal

9

quotations omitted).  It is a judicial obligation.  Specifically, this Court is "obliged to take measures against unethical conduct occurring in connection with any proceeding before it[,]" including without limitation, the disqualification of counsel when impermissible conflicts exist.  *Musicus v. Westinghouse Electric Corp.*, 621 F.2d 742, 743-44 (5th Cir. 1980); see also *Debiasi v. Charter County of Wayne,* 284 F. Supp.2d 760, 770 (E.D. Mich. 2003).

Although the decision whether to disqualify is a question of federal law, this Court must consider the Michigan Rules of Professional Conduct in making this determination.  *In re Ralph Roberts Realty, LLC*, 500 B.R. 862, 864-65 (Bankr. E.D. Mich. 2013) (citing *El Camino,* 623 F.Supp.2d at 876).  See also Local Rule 83.22(b). The paramount concerns here are protecting client confidences and avoiding any appearance of impropriety.  *Manning v. Warring, Cox, James, Skylar, & Allen*, 849 F.2d 222, 225-26 (6th Cir. 1988).

### A.    Bursch's association with the ADF law firm disqualifies it from representing Plaintiff Catholic Charities in this lawsuit.

Bursch's representation of the MDHHS Officials in *Dumont* while holding an executive counsel position at ADF, without any screen or

10

other protection in place to prevent disclosure of his client's confidential

information, clearly disqualifies Bursch from representing Defendants.

That disqualification is also imputed to and thus warrants the

disqualification of both the ADF firm and allied attorneys, including

Wierenga, from representing Plaintiff Catholic Charities here.

### 1.     The Rules of Professional Conduct prohibit ADF from representing Plaintiff in this claim against a former client.

Rule 1.9(a) of the Michigan Rules of Professional Conduct

unequivocally bars an attorney from representing a party whose

interests are adverse to that of a former client in the same or a

substantially similar matter:

> A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interest are materially adverse to the interest of the former client unless the former client consents after consultation.

According to the Michigan Court of Appeals, "[i]t is … clear that

an attorney may *only* undertake to represent a new client against a

former client" where, among other things, "the subject matter of the

current representation is not substantially related to a matter in which

the attorney represented the former client and, further, where there is

no confidential information received from the former client that is in
any way relevant to the representation of the current client." *Barkley v.
City of Detroit,* 514 N.W.2d 242, 246 (Mich. App. 1994) (emphasis
added.)  The Sixth Circuit had made similar observations.  *Nat'l Union
Fire Ins. Co. v. Alticor, Inc.*, 466 F.3d 456, 459 (6th Cir. 2006), vacated
in part on other grounds, 472 F.3d 436 (6th Cir. 2007).

    As explained below, neither of these factors apply.  The subject
matter of this case *is* substantially related to *Dumont*, and Bursch
gained client confidences during his representation of the MDHHS
officials in this earlier, substantially related litigation.

### 2.   *Dumont* is a substantially related litigation.

    There can be no reasonable dispute that *Dumont* is substantially
related to the present lawsuit.  A substantial relationship does not
require identical clients or issues, but merely that "facts pertinent to
problems for which the original legal services sought are relevant to the
present litigation." *Anchor Packing Co. v. Pro-Seal, Inc.,* 688 F. Supp.
1215, 1220-21 (E.D. Mich. 1988), quoting *United States Football League
v. Nat'l Football League,* 605 F. Supp. 1448, 1459 (S.D.N.Y. 1985).

Both *Dumont* and the present litigation involve constitutional challenges to a nondiscrimination clause in MDHHS's standard contract with CPAs and actions taken in enforcement thereof.  Both concern whether CPAs in contract with MDHHS can turn away same-sex couples or LGBTQ individuals who request services under the contract. In other words, the cases are two sides of the same coin.

The *Dumont* plaintiffs alleged that MDHHS Officials violated their constitutional rights by maintaining contracts with CPAs that turned away individuals or couples based on sexual orientation.  Here, Catholic Charities claims that MDHHS Officials have violated or will violate its constitutional rights by not allowing it to turn away same-sex couples or LGBTQ individuals who request services under the contract. (Cplt., ¶¶ 94-95, 131-36, 144; Doc. 1-2, Pg ID 46-49.)  Accordingly, the facts pertinent to resolving this dispute are the same or substantially similar to those in *Dumont*.

## B.   Bursch received confidential information through his representation of the MDHHS Officials in *Dumont*.

The presence of the substantial relationship creates a strong presumption that ADF will use MDHHS's client confidences against it

in the present litigation.  *Nathan v. Shea (In re Marks & Goergens)*, 199 B.R. 922, 925 (E.D. Mich. 1996).  This could be significant.

As lead counsel for the MDHHS Officials in *Dumont*, Bursch had access to thousands of client-documents.  Numerous documents were flagged for Bursch's review and evaluation and in many cases withheld from production on the grounds of privilege.  He also participated in numerous confidential meetings with high-ranking officials regarding the *Dumont* litigation and MDHHS' policy and procedure when working with CPAs like Plaintiff Catholic Charities.  Bursch received confidential information from MDHHS as lead counsel in *Dumont*.

Notably, Defendants need not prove, nor must the Court inquire into whether Bursch actually disclosed confidential information to the ADF attorneys assigned to this case, or whether ADF is employing that confidential information here.  The purpose for requiring a substantial relationship between the subject matter of the current and past representations is to avoid requiring the Court to directly inquire into whether client confidences were disclosed—an inquiry that would necessarily require the divulgence of such confidences.  *Anchor Packing Co.*, 688 F. Supp. at 1226.  It is sufficient that Bursch's prior

14

representation of the MDHHS Officials, while holding an executive position at ADF, provided him access to a significant amount of client confidences that are presumed available in this litigation, and that the litigations are substantially related.

### C.     Bursch's conflict is imputed to all ADF attorneys.

Moreover, Bursch's conflict is imputed to all attorneys associated with him at ADF.  This is not a situation where Bursch joined ADF after his representation of the MDHHS Officials ended.  To the contrary, the attorneys representing Plaintiff were, presumably, associated with Bursch since, at least, July 2018 when he joined ADF as executive counsel.  (Ex. I.)  The following month, he signed a First Amendment to the SAAG Contract and led the representation of the MDHHS Officials in *Dumont* for four months after this.[5]  (During that time, he collaborated with other ADF attorneys in at least one case with substantially the same facts and legal issues as raised here.  *Fulton v. City of Philadelphia,* 922 F.3d 140 (3d Cir. 2019).  (Ex. E.)

---

[5] The SAAG Contract terminated in January 2019.

None of these attorneys can undertake representation from which
Bursch himself is conflicted.  The Michigan Rules of Professional
Conduct are clear:  "While attorneys are associated in a firm, none of
them shall knowingly represent a client when any one of them
practicing alone would be prohibited from doing so by Rules 1.7, 1.8(c),
1.9(a), or 2.2."  Mich. Rule of Prof'l Conduct 1.10(a).

The situation is akin to *Analytica, Inc. v NPD Research, Inc.*
where "the firm itself changed sides."  708 F.2d 1263, 1267 (7th Cir.
1983).  Without a screen or other protection against disclosure of client
confidences among the firm, the Seventh Circuit found it "irrelevant"
whether different attorneys handled the matters at issue in the conflict
analysis. *Id.*  The crucial factor is whether an attorney "could have
obtained confidential information in the first representation that would
have been relevant in the second." *Id.*

Similarly, the Michigan Court of Appeals relied on Rule 1.10(a) to
disqualify a law firm from representing a potential cross-claimant of a
former client in a substantially related litigation.  *Avink v. SMG*, 761
N.W.2d 826, 827-31 (Mich. Ct. App. 2009).  Like the Seventh Circuit,
the Michigan Court of Appeals was not persuaded by the firm's

16

assertion that different attorneys were employed in the respective litigations. The court recognized that such an argument "ignores MRPC 1.10(a)," through which the court "impute[s] conflict of interest to the entire firm." *Id.* at 831.

This imputed conflict extends to David, Wierenga & Lauka, P.C., Plaintiff's local counsel. While Wierenga may not be employed by ADF full-time, he is described as an "ADF-allied attorney" in a press release published on ADF's website.[6] He also, apparently, worked with Bursch and another ADF attorney as local counsel in the federal district court case described in the above-cited press release, which challenged the application of a local ordinance prohibiting discrimination based on sexual orientation. *Id.* Rule 1.10 extends to attorneys "associated" in a law firm and, Defendants maintain that Wierenga is an "associated" attorney as local counsel and as Bursch's "allied attorney" at ADF.

### D. ADF's May 6, 2019 Letter does not evidence a timely or effective screen.

Neither Bursch nor ADF undertook the steps necessary to avoid this conflict. The SAAG Contract, at least, placed Bursch on notice of a

---

[6] See Alliance Defending Freedom, *supra* note 3.

duty to obtain prior written approval before accepting employment with ADF regarding interests related to the subject matter of the SAAG Contract. (Ex. A, ¶¶ 5.2, 5.10.) There is no record that he did this. Nor is there any record that *at the time Bursch associated himself with ADF*, ADF implemented a screen that protected the MDHHS Officials' confidences from being shared among Bursch's associates at ADF.

The May 6, 2019 letter states that ADF decided to screen Bursch "at the very beginning of its representation" of Plaintiff Catholic Charities in this matter. The letter did not provide a date as to when the representation began, but presumably, it was after the *Dumont* Consent Decree was filed and, therefore, several months after Bursch's association with ADF began. No emails or other records were provided in support of this conclusory statement.

ADF also failed to comply with Rule 1.11 of the Michigan Rules of Professional Conduct. Subsection (a) permits lawyers to represent private clients in matters in which an attorney in the same firm "participated personally and substantially as a public officer or employee" *only* if the conflicted attorney is screened and "written notice is promptly given to the appropriate government agency to enable it to

ascertain compliance with the provisions of this rule." *Id.* "Matter" is defined broadly to include, among other things, a claim or controversy. Mich. Rules Prof'l Conduct 1.11(d)(1).

The "matter" at issue here is whether MDHHS's policy or practice authorizes CPAs like Plaintiff to turn away same-sex couples or LGBTQ individuals who requests services under the CPA contract. As explained above, this was the central issue in the *Dumont* litigation, and Bursch personally and substantially participated in *Dumont* as a SAAG. In August 2018, while Bursch was under contract to represent MDHHS Officials in *Dumont*, ADF was involved in litigation of a same, or at least, nearly identical matter in *Fulton*. Rule 1.11(a) permits this only by implementing a screen and providing prompt notice to MDHHS. Neither was done. In fact, rather than screen Bursch and segregate him from such representation, ADF authorized Bursch's participation, co-authoring a September 2018 amicus brief for ADF that was filed in in *Fulton*. Plaintiff's counsel should be disqualified for failure to comply with Rule 1.11.

Notably, even if ADF had implemented a timely screen, no notice of the conflict or the screen was provided to MDHHS at the time. Rule

19

1.11(a) requires the ADF law firm not only to implement a screen, but also to provide prompt written notice of the screen to the government agency so that the agency can sufficiently ascertain ADF's compliance with the rule.

The May 6, 2019 letter does not demonstrate prompt notice. Defendants Gordon and Chang received it on May 9, 2019–almost two weeks after the complaint had been filed. While the letter states that a decision to screen Bursch "occurred at the very beginning of representation," it provides no details as to when this representation began. It is unlikely the 42-page complaint, with significant details regarding the services purportedly provided by Catholic Charities under the CPA contract, was drafted overnight. Nor are there details as to what efforts were being taken to screen Bursch, other than a representation that he agreed not to participate in discussion regarding the case.

In *Cobb Publishing v. Hearst Corporation,* this Court disqualified a firm from continuing representation because its notice to the tribunal came 16 days after the conflicted lawyer began working at the firm. 907 F.Supp. 1038, 1048-49 (E.D. Mich. 1995). This Court found this did

not qualify as "prompt" notice to the tribunal as required by Rule 1.10(b) of the Michigan Rules of Professional Conduct.  It also found the screen untimely because it was not in place until ten days after the attorney started working at the firm.  *Id.* at 1044, 1048-49.  Given the timing of the May 6, 2019, letter and the vague information provided therein, similar findings are appropriate here.

## CONCLUSION AND RELIEF REQUESTED

For the reasons explained above, the Defendants respectfully request this Court enter an order disqualifying Alliance Defending Freedom and David, Wierenga, & Lauka, P.C. from representing Plaintiff Catholic Charities West Michigan in this case.  The Defendants further request that Plaintiff be given 30 days to obtain new counsel and if Plaintiff fails to do so, this case be dismissed without prejudice.

Respectfully submitted,

Dana Nessel
Attorney General

/s/ Joshua S. Smith
Joshua S. Smith (P63349)
Toni L. Harris (P63111)
Precious S. Boone (P81631)
Elizabeth R. Husa Briggs (P73907)
Assistant Attorneys General
Attorneys for Defendants
Health, Education & Family Services Division
P.O. Box 30758
Lansing, MI  48909
(517) 335-7603
Smithj46@michigan.gov

Dated:  June 12, 2019

22

## CERTIFICATE OF SERVICE

I hereby certify that on June 12, 2019, I electronically filed the above document(s) with the Clerk of the Court using the ECF System, which will provide electronic copies to counsel of record.

/s/ Joshua S. Smith
Joshua S. Smith (P63349)
Assistant Attorneys General
Attorneys for Defendants
Health, Education & Family
Services Division
P.O. Box 30758
Lansing, MI  48909
(517) 335-7603
Smithj46@michigan.gov