# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

|  |  |
|---|---|
| CATHOLIC CHARITIES WEST MICHIGAN, | No. 2:19-cv-11661-DPH-DRG |
| Plaintiff, | HON. DENISE PAGE HOOD |
| v. | MAG. J. DAVID R. GRAND |
| MICHIGAN DEPARTMENT OF HEALTH AND HUMAN SERVICES; ROBERT GORDON, in his official capacity as the Director of the Michigan Department of Health and Human Services; MICHIGAN CHILDREN'S SERVICES AGENCY; JOOYEUN CHANG, in her official capacity as Executive Director of Michigan Children's Services Agency; DANA NESSEL, in her official capacity as Attorney General of Michigan, | **MOTION TO INTERVENE**<br><br>**ORAL ARGUMENT REQUESTED** |
| Defendants. |  |

Kristy Dumont and Dana Dumont (collectively, "the Dumonts") respectfully move this Court under Federal Rule of Civil Procedure 24(a)(2) and (b)(1) for leave to intervene in the above-captioned action (the "Action") for the reasons below and explained more fully in the brief filed in support of this motion (the "Motion") and the Proposed Answer, attached hereto as Exhibit A.

1.     The Dumonts respectfully seek intervention as of right in this Action. *See* Fed. R. Civ. P. 24(a)(2).  The Dumonts satisfy the four required prongs for

intervention as of right: "(1) that the motion to intervene was timely; (2) that they have a substantial legal interest in the subject matter of the case; (3) that their ability to protect that interest may be impaired in the absence of intervention; and (4) that the parties already before the court may not adequately represent their interest." *Grutter* v. *Bollinger*, 188 F.3d 394, 397–98 (6th Cir. 1999).

2.     *First*, the Motion is timely because it is filed at the very early stages of this Action, before any party has responded to the Plaintiff's motion for a preliminary injunction or the commencement of discovery.  *Second*, the Dumonts have a substantial legal interest in the subject matter of the case because the complaint filed by Catholic Charities West Michigan ("CCWM") directly implicates the Dumonts' rights under the Equal Protection and Establishment Clauses of the United States Constitution.  The Dumonts sought to vindicate these rights in *Dumont et al.* v. *Gordon et al.*, 2:17-cv-13080-PDB-EAS (E.D. Mich. 2019) ("*Dumont*"), wherein the Dumonts reached a settlement agreement (the "Settlement Agreement") with the State of Michigan to end discrimination by state-contracted child placing agencies ("CPAs").  The Dumonts have a substantial interest in preserving the Settlement Agreement that in turn protects their constitutional rights and protects them against being exposed to further discrimination as they pursue adopting a child out of foster care.  *Third*, the Dumonts' interests in preserving the relief obtained through the Settlement Agreement and avoiding further constitutional injury may be

impaired in the absence of intervention because if CCWM succeeds in its claims, the Dumonts' Settlement Agreement would be rendered meaningless. The Dumonts dismissed their previous claims in exchange for a settlement that provided them the relief they sought, and would be left without recourse. And *finally*, no party currently before the Court can adequately represent the Dumonts' interests because Defendants are unlikely to assert many of the defenses the Dumonts intend to raise.

3.    Alternatively, the Dumonts respectfully ask the Court to exercise its discretion to allow permissive intervention because the Dumonts' defenses share with the pending litigation "a common question of law or fact," Fed. R. Civ. P. 24(b)(1)(B), and intervention will not "unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3); *Purnell* v. *City of Akron*, 925 F.2d 941, 951 (6th Cir. 1991). Both the Plaintiff and the Dumonts raise claims or defenses related to whether the First and Fourteenth Amendments to the United States Constitution require the State of Michigan to permit state-contracted CPAs to violate the contracts' non-discrimination requirement that includes sexual orientation. Granting the Dumonts' motion to intervene will not result in delay or prejudice because the case is in its very early stages, and the Dumonts are prepared to proceed according to the schedule ordered by the Court.

4.    In accordance with the Eastern District of Michigan's Local Civil Rule 7.1(a), the Dumonts conferred with counsel for Plaintiffs and Defendants via e-mail

on July 17, 2019 to determine if they would oppose the Motion to Intervene. Counsel for Defendants the Michigan Department of Health and Human Services, Robert Gordon, in his official capacity as the Director of the Michigan Department of Health and Human Services, JooYeun Chang, in her official capacity as the Executive Director of the Michigan Children's Services Agency, and Dana Nessel, in her official capacity as Attorney General of Michigan responded on July 17 that they concur in the relief sought. Counsel for Plaintiff responded on July 17 that they do not concur and will oppose the motion.

Dated:  July 17, 2019                    Respectfully submitted,

                                         *s/ Ann-Elizabeth Ostrager*
                                         _____

Jay Kaplan (P38197)                      Leslie Cooper
Daniel S. Korobkin (P72842)              American Civil Liberties Union
American Civil Liberties Union              Foundation
   Fund of Michigan                      125 Broad Street, 18th Floor
2966 Woodward Avenue                     New York, NY  10004
Detroit, MI  48201                       Telephone:  (212) 549-2633
Telephone:  (313) 578-6823               lcooper@aclu.org
jkaplan@aclumich.org
dkorobkin@aclumich.org
                                         Garrard R. Beeney
                                         Ann-Elizabeth Ostrager
Daniel Mach                              Leila R. Siddiky
American Civil Liberties Union           Jason W. Schnier
   Foundation                            Lisa M. Ebersole
915 15th Street NW                       Hannah M. Lonky
Washington, DC  20005                    James G. Mandilk
Telephone:  (202) 675-2330               SULLIVAN & CROMWELL LLP
dmach@aclu.org                           125 Broad Street

New York, NY 10004-2498
Telephone: (212) 558-4000
beeneyg@sullcrom.com
ostragerae@sullcrom.com
siddikyl@sullcrom.com
schnierj@sullcrom.com
ebersolel@sullcrom.com
lonkyh@sullcrom.com
mandilkj@sullcrom.com

*Counsel for Proposed Intervenor
Defendants*

# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

CATHOLIC CHARITIES WEST
MICHIGAN,

               Plaintiff,

       v.

MICHIGAN DEPARTMENT OF
HEALTH AND HUMAN SERVICES;
ROBERT GORDON, in his official
capacity as the Director of the Michigan
Department of Health and Human
Services; MICHIGAN CHILDREN'S
SERVICES AGENCY; JOOYEUN
CHANG, in her official capacity as
Executive Director of Michigan
Children's Services Agency; DANA
NESSEL, in her official capacity as
Attorney General of Michigan,

               Defendants.

No. 2:19-cv-11661-DPH-DRG

HON. DENISE PAGE HOOD

MAG. J. DAVID R. GRAND

**<u>BRIEF IN SUPPORT OF
MOTION TO INTERVENE</u>**

**ORAL ARGUMENT
REQUESTED**

# TABLE OF CONTENTS

**Page**

CONCISE STATEMENT OF ISSUES PRESENTED ...............................................v

PRELIMINARY STATEMENT ...............................................................1

BACKGROUND ......................................................................2

LEGAL STANDARD ................................................................7

ARGUMENT .......................................................................9

I.     THE DUMONTS ARE ENTITLED TO INTERVENTION AS OF
       RIGHT .....................................................................9

       A.     The Dumonts' Motion Is Timely ......................................9

       B.     The Dumonts Have a Substantial Legal Interest in the Action...........10

       C.     The Dumonts' Interests May Be Impaired Without Intervention.......15

       D.     No Other Party Adequately Represents the Dumonts' Interests.........17

II.    IN THE ALTERNATIVE, THE COURT SHOULD EXERCISE ITS
       DISCRETION TO ALLOW PERMISSIVE INTERVENTION .................19

CONCLUSION ....................................................................19

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Blount-Hill* v. *Bd. of Educ. of Ohio*,
  195 F. App'x 482 (6th Cir. 2006) ....................................................................12

*City of St. Louis* v. *Velsicol Chem. Corp.*,
  708 F. Supp. 2d 632 (E.D. Mich. 2010) ...........................................................11

*Coal. to Defend Affirmative Action* v. *Granholm*,
  240 F.R.D. 368 (E.D. Mich. 2006) ..............................................................14, 15

*Dumont* v. *Lyon*,
  341 F. Supp. 3d 706 (E.D. Mich. 2018) ..............................................3, 4, 11, 13

*Fulton* v. *City of Philadelphia*,
  922 F.3d 140 (3d Cir. 2019) ........................................................................14, 17

*Grutter* v. *Bollinger*,
  188 F.3d 394 (6th Cir. 1999) .............................................................8, 14, 17, 18

*Horrigan* v. *Thompson*,
  1998 WL 246008 (6th Cir. May 7, 1998)............................................................8

*Jansen* v. *City of Cincinnati*,
  904 F.2d 336 (6th Cir. 1990) ..........................................................10, 11, 12, 16

*Linton* v. *Comm'r of Health & Env't., State of Tenn.*,
  973 F.2d 1311 (6th Cir. 1992) .......................................................................9, 12

*Meriwether* v. *Trs. of Shawnee State Univ.*,
  2019 WL 2052110 (S.D. Ohio May 9, 2019).....................................................18

*Mich. State AFL-CIO* v. *Miller*,
  103 F.3d 1240 (6th Cir. 1997) ................................................................9, 10, 15

*Parkwest Dev., LLC* v. *Ellahi*,
  2018 WL 3640433 (E.D. Mich. Aug. 1, 2018)................................................8, 9

*Purnell* v. *City of Akron*,
  925 F.2d 941 (6th Cir. 1991) .......................................................................8, 19

iii

*Trbovich* v. *United Mine Workers of Am.*,
    404 U.S. 528 (1972) ............................................................................17

*Usery* v. *Brandel*,
    87 F.R.D. 670 (W.D. Mich. 1980) .....................................................14

## Other Authorities

Fed. R. Civ. P. 24 ............................................................................*passim*

Fed. R. Civ. P. 41 ....................................................................................1

## CONCISE STATEMENT OF ISSUES PRESENTED

1. Whether Kristy and Dana Dumont satisfy the requirements for intervention as of right where Plaintiff Catholic Charities West Michigan seeks relief that would impair the Dumonts' rights under the Establishment and Equal Protection Clauses, nullify the settlement agreement they executed with the State in *Dumont* v. *Gordon*, and impose stigmatic and practical harms by requiring them to navigate a foster care and adoption system that permits discrimination against families like them.

2. Whether the Court should grant the Dumonts permissive intervention where both the Dumonts and Plaintiffs will raise common questions of law regarding whether the First and Fourteenth Amendments to the United States Constitution require state-contracted child placing agencies to be permitted to discriminate against prospective foster and adoptive parents.

## CONTROLLING OR MOST APPROPRIATE AUTHORITY

*Grutter* v. *Bollinger*, 188 F.3d 394, 399 (6th Cir. 1999) (finding that prospective minority applicants had a "direct, substantial, and compelling" legal interest to support intervention as of right in a lawsuit brought by white applicants challenging a university's race-conscious admissions policy, where the proposed intervenors' interest in gaining admission could be impacted if the university were ordered to stop considering race as a factor in admissions); *Jansen* v. *City of Cincinnati*, 904 F.2d 336, 342 (6th Cir. 1990) (granting intervention where the "proposed intervenors had an interest in continuing" the mandates of the consent decree); *Linton* v. *Comm'r of Health & Env't., State of Tenn.*, 973 F.2d 1311, 1319 (6th Cir. 1992) (reversing district court denial of motion by nursing homes to intervene as of right in suit brought by medical patients against state agency administering Medicare program because the district court "failed to recognize the alleged impairment of the movants' contractual and statutory rights"); *Purnell* v. *City of Akron*, 925 F.2d 941, 950 (6th Cir. 1991) (holding that "Rule 24(b) grants the district court discretionary power to permit intervention if the motion is timely, and if the applicant's claim or defense and the main action have a question of law or fact in common.").

## PRELIMINARY STATEMENT

Catholic Charities West Michigan ("CCWM" or "Plaintiff") seeks to force the State of Michigan to permit state-contracted, taxpayer-funded child placing agencies ("CPAs") to discriminate against prospective foster and adoptive families headed by same-sex couples, in violation of the Dumonts' constitutional rights—rights they successfully protected in *Dumont et al.* v. *Gordon et al.*, 2:17-cv-13080-PDB-EAS (E.D. Mich. 2019) ("*Dumont*").   If CCWM prevails, the settlement agreement ("Settlement Agreement") reached in *Dumont* will be rendered meaningless.

After being subjected to discrimination by two CPAs, the Dumonts sued the State claiming that allowing state-contracted, taxpayer-funded CPAs to use religious criteria to exclude same-sex couples violated the Establishment and Equal Protection Clauses.   The core legal issues raised in this action (the "Action") were also asserted in *Dumont*, in which another CPA, St. Vincent Catholic Charities ("STVCC"), intervened as a defendant and raised the identical federal constitutional arguments CCWM now raises in this case.   After denial of the State's and STVCC's motions to dismiss, the State ultimately settled with the Dumonts and, in so doing, agreed to enforce the non-discrimination provisions in its CPA contracts and take corrective action against CPAs that failed to comply with those provisions.   The *Dumont* court then dismissed the case "pursuant to the terms of the Settlement

Agreement." *Dumont*, ECF No. 83 at PageID.1469; *see also* Fed. R. Civ. P. 41(a)(2) ("[A]n action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper."). That settlement meant that the Dumonts could pursue their goal of adopting a child out of foster care in Michigan without being denied access to the same array of CPAs that are available to heterosexual couples and without being further subjected to the stigma of discrimination. CCWM now threatens to render that settlement meaningless, depriving the Dumonts of the relief procured.

Because the Dumonts meet all prongs of the Sixth Circuit's inquiry for intervention as of right—(1) a timely motion; (2) a substantial legal interest that will be impaired; and (3) inadequate representation from the parties before the Court— and, in the alternative, for permissive intervention, they should be allowed to intervene in this Action to protect their constitutional rights and their interest in the State's enforcement of the non-discrimination provision in its CPA contracts.

## BACKGROUND

In 2016 and 2017, Kristy and Dana Dumont contacted two state-contracted CPAs, STVCC and Bethany Christian Services, to inquire about adopting a child from foster care and were turned away because the agencies stated that they "do[] not work with same-sex couples." *Dumont*, ECF No. 1 at PageID.16–17. On September 20, 2017, the Dumonts, along with Erin and Rebecca Busk-Sutton

(collectively the "*Dumont* Plaintiffs"),[1] filed a complaint against Nick Lyon, in his official capacity as the Director of the Michigan Department of Health and Human Services ("MDHHS"), and Herman McCall, in his official capacity as the Executive Director of the Michigan Children's Services Agency (collectively the "*Dumont* State Defendants"), in the Eastern District of Michigan. The suit challenged the State's apparent practice of permitting state-contracted, taxpayer-funded CPAs to use religious criteria to exclude same-sex couples from fostering or adopting children in State custody. *See generally id.* The *Dumont* Plaintiffs claimed that delegating the public function of providing foster care services to a religious organization and then authorizing the organization to exclude participants based on religious criteria violated the Establishment Clause. *Id.* at PageID.1–4. The *Dumont* Plaintiffs further claimed that discrimination based on sexual orientation in this government program violated the Equal Protection Clause because it furthered no legitimate government interest and, to the contrary, undermined the State's interest in finding families for children by reducing their placement options. *See id.* at PageID.20–21.

---

[1]     The claims of another Plaintiff, Jennifer Ludolph, who claimed only taxpayer standing, were dismissed. *Dumont* v. *Lyon*, 341 F. Supp. 3d 706, 714 (E.D. Mich. 2018). None of the other *Dumont* Plaintiffs are currently moving to intervene alongside the Dumonts.

STVCC moved for leave to intervene in *Dumont*, which the *Dumont* court granted. *Dumont*, ECF Nos. 18, 33 & 34. The *Dumont* State Defendants and STVCC both moved to dismiss the *Dumont* complaint. *Dumont*, ECF Nos. 16 & 19. STVCC's motion asserted (like CCWM's complaint here) that the court could not constitutionally grant the relief sought by the *Dumont* Plaintiffs because it would violate STVCC's free exercise and free speech rights. *See Dumont*, ECF No. 19, at PageID.3. Following oral argument, the *Dumont* court denied the motions to dismiss the *Dumont* Plaintiffs' claims, holding that their allegations that the State authorized state-contracted, taxpayer-funded agencies to use religious criteria to exclude same-sex couples stated claims under the Establishment and Equal Protection Clauses of the United States Constitution. *Dumont* v. *Lyon*, 341 F. Supp. 3d 706, 714 (E.D. Mich. 2018); *see also id.* at 740, 743 (holding that the allegations of the complaint "surely 'implicate' the Establishment Clause and plausibly suggest 'excessive entanglement'" and that the Dumont Plaintiffs were "entitled to an opportunity to conduct discovery to support their claim that the State's practice of continuing to contract with faith-based agencies that . . . turn away same-sex couples lacks a rational basis"). The court was also "unconvinced" that STVCC could "prevail on a claim that prohibiting the State from allowing the use of religious criteria by those private agencies hired to do the State's work would violate [STVCC's] Free Exercise or Free Speech rights." *Id.* at 749.

Following denial of the motions to dismiss, the parties engaged in substantial discovery. This included the exchange of written discovery and document production (totaling over 66,600 pages produced by the parties), through which it was revealed, *inter alia*, that:

- Pursuant to their contracts, MDHHS requires CPAs to provide services including recruitment, evaluation and licensure of prospective families (*Buck et al.* v. *Gordon et al.*, 1:10-cv-00286-RJJ-PJG (W.D. Mich. 2019), ECF No. 1-7 at PageID.123–24);

- It is MDHHS' position that CPAs under contract with MDHHS must work with all prospective foster or adoptive parents who need or seek such services (*Buck*, ECF No. 1-4 at PageID.94–95);

- MDHHS previously determined, through special investigation, that CCWM had policies of not accepting same-sex couples, and took corrective action against it (*see Buck*, ECF No. 34-3 at PageID.977–78);

- MDHHS had initiated investigations, still in process, against STVCC and Bethany Christian Services for alleged anti-discrimination policy violations as a result of the allegations in the *Dumont* complaint (*id.*; *see also Buck*, ECF No. 6-16 at PageID.379); and

- MDHHS was aware that certain CPAs were discriminating against same-sex parents, but ultimately allowed this discrimination to continue (*see Dumont*, ECF No. 16 at PageID.76–77).

Before depositions and the briefing of dispositive motions, the *Dumont* Plaintiffs and the *Dumont* State Defendants began settlement discussions and jointly moved on January 23, 2019 for a stay of the proceedings. *Dumont*, ECF No. 74. On January 24 and February 22, the *Dumont* court entered orders staying the case for a total of 60 days to facilitate settlement. *Dumont*, ECF Nos. 76 & 81. On March 22, 2019,

shortly before expiration of the stay, the *Dumont* Plaintiffs and Defendants Robert Gordon, in his official capacity as Director of MDHHS, and Jennifer Wrayno, in her official capacity as Acting Executive Director of the Michigan Children's Agency, entered into the Settlement Agreement to resolve the *Dumont* Plaintiffs' claims. *Dumont*, ECF No. 82.

Pursuant to the Settlement Agreement, the *Dumont* State Defendants agreed, among other things, to continue including a provision in their CPA contracts that prohibits discrimination "against any individual or group because of race, sex, religion, age, national origin, color, height, weight, marital status, gender identity or expression, sexual orientation, political beliefs, or disability," and to enforce compliance with the non-discrimination provision by, in the case of CPAs unwilling to comply, terminating those contracts. *Dumont*, ECF No. 82 at PageID.1444–46. The Settlement Agreement made clear that "turning away or referring to another contracted CPA an otherwise potentially qualified LGBTQ individual or same-sex couple that may be a suitable foster or adoptive family for any child accepted by the CPA for services under a [state contract]" violates the non-discrimination provision. *Id.* at PageID.1445. In exchange, the *Dumont* Plaintiffs agreed to dismiss their claims against the *Dumont* State Defendants with prejudice. Upon entering into the Settlement Agreement, the *Dumont* Plaintiffs and the *Dumont* State Defendants filed a stipulation of voluntary dismissal pursuant to Federal Rule of Civil Procedure

41(a)(2).  *Dumont*, ECF No. 82.  The court dismissed the *Dumont* case "pursuant to the terms of the Settlement Agreement."  *Dumont*, ECF No. 83 at PageID.1469.

Because of the protections afforded by the State's representations in executing the Settlement, the Dumonts have "resumed evaluating child placing agencies and inquiring about fostering and adopting a child from the Michigan child welfare system."  (Declaration of Kristy Dumont ¶ 9, attached hereto as Exhibit B; Declaration of Dana Dumont ¶ 9, attached hereto as Exhibit C.)  As they actively pursue fostering and adopting children, they "want to have the full range of options available to [them] that everyone else has."  (Kristy Dumont Decl. ¶ 10; Dana Dumont Decl. ¶ 10.)

CCWM filed this Action on April 25, directly implicating the constitutional rights that the Dumonts sought to protect, and succeeded in protecting via the Settlement Agreement reached in *Dumont*.  Allegations regarding *Dumont*, the *Dumont* Settlement Agreement and the State's actions to comply with the Settlement Agreement form the crux of CCWM's Complaint.  ECF No. 1 at ¶¶ 125-134.

## LEGAL STANDARD

Intervention should be granted as of right where a proposed intervenor "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair

or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2). Thus, to intervene as a matter of right, proposed intervenors must establish: "(1) that the motion to intervene was timely; (2) that they have a substantial legal interest in the subject matter of the case; (3) that their ability to protect that interest may be impaired in the absence of intervention; and (4) that the parties already before the court may not adequately represent their interest." *Grutter* v. *Bollinger*, 188 F.3d 394, 397–98 (6th Cir. 1999).

The court may also permit a party to intervene where she "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B); *see also Purnell* v. *City of Akron*, 925 F.2d 941, 950 (6th Cir. 1991) ("Rule 24(b) grants the district court discretionary power to permit intervention if the motion is timely, and if the applicant's claim or defense and the main action have a question of law or fact in common.") (internal citation and punctuation omitted). The court must also "consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." *Purnell*, 925 F.2d at 951 (internal citation omitted); *see* Fed. R. Civ. P. 24(b)(3).

In considering a motion to intervene, the court "'must accept as true the non-conclusory allegations of the motion.'" *Horrigan* v. *Thompson*, No. 96-4138, 1998 WL 246008, at *2 (6th Cir. May 7, 1998) (quoting *Lake Inv'rs Dev. Grp.* v. *Egidi Dev. Grp.*, 715 F.2d 1256, 1258 (7th Cir. 1983)); *see also Parkwest Dev., LLC*

v. *Ellahi*, No. 18-CV-10385, 2018 WL 3640433, at *2 (E.D. Mich. Aug. 1, 2018) ("Rule 24 . . . does not require that the proposed intervenor conclusively establish its claim before intervention is allowed.  By its terms, the rule applies to anyone who 'claims' an interest in the action . . . ").

## ARGUMENT

## I.    THE DUMONTS ARE ENTITLED TO INTERVENTION AS OF RIGHT.

### A.    The Dumonts' Motion Is Timely.

The Motion is timely filed because this Action is in its initial stage.  In assessing timeliness under Rule 24, the court must consider:

> (a) the point to which the suit has progressed; (b) the purpose for which intervention is sought; (c) the length of time preceding the application during which the applicant knew or reasonably should have known of its interest in the case; (d) prejudice to the original parties due to the failure of the applicant to apply promptly for intervention upon acquiring the knowledge of its interest; and (e) any unusual circumstances of the case.

*Linton* v. *Comm'r of Health and Env't., State of Tenn.*, 973 F.2d 1311, 1317 (6th Cir. 1992).  In *Michigan State AFL-CIO* v. *Miller*, a motion to intervene was held "timely as a matter of law" where it was filed when "the case was obviously in its initial stage."  103 F.3d 1240, 1245 (6th Cir. 1997).  Here, the Motion was filed before any party has responded to the motion for preliminary injunction and before the commencement of discovery.  This clearly satisfies the timeliness requirement.

**B.    The Dumonts Have a Substantial Legal Interest in the Action.**

The Sixth Circuit "has opted for a rather expansive notion of the interest sufficient to invoke intervention of right," and has held that any "close cases should be resolved in favor of recognizing an interest under Rule 24(a)." *Miller*, 103 F.3d at 1245, 1247.  CCWM seeks to force the State, in violation of its obligations under the Settlement Agreement, to contract with organizations that discriminate in the provision of adoption and foster care services.  The Dumonts have a substantial interest in this Action for two reasons.  *First*, the Dumonts have an interest in protecting the hard-fought Settlement Agreement they obtained in exchange for the dismissal of their constitutional claims.  The relief CCWM seeks would vitiate the Dumonts' contractual rights under the Settlement Agreement.  *Second*, the relief CCWM seeks would mean that the Dumonts would be subjected to unconstitutional unequal treatment, causing further practical and stigmatic injuries by requiring the Dumonts to pursue their desire to adopt a child from foster care in a system in which agencies may, once again, discriminate against them.

*First*, a party has a substantial interest warranting intervention as of right where, as here, the proposed intervenor is party to a court-endorsed settlement agreement that is directly challenged in a separate litigation.  *See Jansen* v. *City of Cincinnati*, 904 F.2d 336, 342 (6th Cir. 1990) (granting motion to intervene where "[t]he proposed intervenors . . . are *parties* to the consent decree challenged in this

action") (emphasis in original).  The *Jansen* v. *City of Cincinnati* case dealt with a collateral challenge by a group of white firefighters to a consent decree regarding race-based employment practices entered into by the City of Cincinnati and a group of black firefighters.  *Id.* at 339.  The black firefighters moved to intervene in the white firefighters' case to defend the consent decree.  *Id.*  The Sixth Circuit held that the black firefighters had a "significant legal interest in the subject matter of the litigation" where they were "parties to [a] consent decree challenged in" the pending action and where "[a]t stake in this litigation is the proposed intervenors' interest in continuing" the mandates of the consent decree.  *Id.* at 341, 42; *see also City of St. Louis* v. *Velsicol Chem. Corp.*, 708 F. Supp. 2d 632, 669 (E.D. Mich. 2010) (granting motion by United States to intervene as of right in suit brought by City of St. Louis against trustees challenging certain trusts established pursuant to settlement agreement to which United States was party).  As in *Jansen*, where the white firefighters' lawsuit sought to undo the affirmative action program established by the City's consent decree, here, CCWM seeks to undo the Settlement Agreement. Specifically, CCWM wants to prevent the State from enforcing the non-discrimination provision in its CPA contracts.  The Dumonts litigated against the State and another CPA for over a year to achieve a commitment from the State that discrimination against families like theirs would no longer be permitted in the State of Michigan.  However Plaintiff may characterize it, the Action seeks to completely

eviscerate the Settlement Agreement.  The Dumonts, like the intervenors in *Jansen*,

have a substantial interest in protecting the relief secured through adversarial

negotiations with the State.[2]

The relief CCWM seeks would, if granted, infringe on the Dumonts'

existing contractual rights.  The Sixth Circuit has recognized that a proposed

intervenor has a sufficient legal interest for intervention where the resolution of a

litigation would directly impair her contractual rights.  *See, e.g.*, *Linton*, 973 F.2d at

1319 (reversing district court denial of motion by nursing homes to intervene as of

right in suit brought by medical patients against state agency administering Medicaid

program because the district court "failed to recognize the alleged impairment of the

movants' contractual and statutory rights"); *Dumont*, ECF No. 34 at PageID.783

.

("[T]his action directly involves [proposed intervenors'] ability to continue to use

religious criteria when performing child welfare services for the State of Michigan"

pursuant to its contracts.); *cf. Blount-Hill* v. *Bd. of Educ. of Ohio*, 195 F. App'x 482,

486 (6th Cir. 2006) (affirming denial of motion to intervene where proposed

intervenor was "not a party to any challenged contract nor [was] it directly targeted

by plaintiffs' complaint").  Over more than two months, and after substantial

---

[2]     The fact that the settlement in *Jansen* was a consent decree does not change
the analysis: the black firefighters had an interest in protecting the relief they
secured, just like the Dumonts do.

discovery and motion practice, the Dumonts negotiated the terms of the Settlement Agreement, which requires that MDHHS enforce the non-discrimination provision of their CPA contracts and provides for specific performance if MDHHS fails to investigate or enforce alleged violations of the non-discrimination provision, up to and including termination of such contracts.  *See Dumont*, ECF No. 82.  The Settlement Agreement, therefore, contractually binds MDHHS to ensure its non-discrimination provision protects the Dumonts and others similarly situated.  If CCWM succeeds in forcing Defendants to continue contracting with CCWM to provide foster care and adoption services despite CCWM's continued discrimination, *see* Compl., ECF No. 1-2 at PageID.62–63, it will render the Settlement Agreement a nullity and eliminate the entire benefit of the Dumonts' bargain with the *Dumont* State Defendants.

*Second*, the relief CCWM seeks here—the right to dictate the terms of a contract to provide public child welfare services while employing religious eligibility criteria to exclude qualified same-sex couples—is precisely what was challenged in *Dumont*.  In considering the Dumonts' allegations, the *Dumont* court determined that such conduct constitutes a cognizable injury-in-fact.  *Dumont*, 341 F. Supp. 3d at 720–22.  The *Dumont* court recognized that the Dumonts faced a practical barrier; because fewer agencies will work with them, "'it [is] more difficult for [same-sex couples to adopt] than it is for [heterosexual couples]'") (quoting *Ne.*

*Fla. Chapter of Assoc. Gen. Contractors of Am.* v. *City of Jacksonville*, 508 U.S. 656, 666 (1993)) (second and third alterations in original).  Further, the *Dumont* court recognized that the stigma of "personally encounter[ing] . . . unequal treatment . . . through that act of being turned away as prospective adoptive parents" was itself an injury.  *See also Fulton* v. *City of Philadelphia*, 922 F.3d 140, 164 (3d Cir. 2019). ("The harm is not merely that gay foster parents will be discouraged from fostering. It is the discrimination itself.")  Now CCWM seeks to again expose the Dumonts to unconstitutional unequal treatment and thus further practical and stigmatic injury. (*See* Kristy Dumont Decl. ¶¶ 8–10; Dana Dumont Decl. ¶¶ 8–10.)

The Dumonts' substantial interest in avoiding the injury that would result from the relief sought by CCWM is well-recognized.  *Usery* v. *Brandel*, 87 F.R.D. 670, 676 (W.D. Mich. 1980) ("It is well-established that an applicant has 'a significant protectable interest' in rights which may be affected by interpretation in a pending case. . . .").  For example, in *Grutter* v. *Bollinger*, the Sixth Circuit found that prospective minority applicants to the University of Michigan had a "direct, substantial, and compelling" legal interest to support intervention as of right in a lawsuit brought by white applicants challenging the University's race-conscious admissions policy, where the proposed intervenors' chances of "gaining admission to the University" could be impacted if the University were ordered to stop considering race as a factor in admissions.  188 F.3d at 399–400; *see also Coal. to*

14

*Defend Affirmative Action* v. *Granholm*, 240 F.R.D. 368, 371, 375 (E.D. Mich. 2006) (granting motion to intervene by white prospective applicant to University in lawsuit challenging state constitutional amendment "bar[ring] the use of race, sex, color, ethnicity, or national origin to promote diversity in public hiring, contracting, and university admission decisions" because "if the present plaintiffs are successful in obtaining a ruling that the constitutional amendment is invalid, [proposed intervenor's] chances of gaining admission . . . may be diminished"). Here too, the Dumonts have a "direct, substantial, and compelling" legal interest in the resolution of CCWM's claims; if CCWM's claims are successful, the protections against discrimination that they secured in the *Dumont* Settlement Agreement would be eviscerated.

### C.   The Dumonts' Interests May Be Impaired Without Intervention.

The Dumonts meet the "minimal" burden to show that "impairment of [their] substantial legal interest is possible if intervention is denied." *Miller*, 103 F.3d at 1247. Here, the Dumonts' substantial legal interests in preserving the relief obtained through their Settlement Agreement and avoiding further constitutional injury may be impaired without intervention because if CCWM succeeds in their claims, the Dumonts' Settlement Agreement would become meaningless and the Dumonts' constitutional rights would again be infringed. The Dumonts dismissed

their previous claims in exchange for a settlement that provided them the relief they sought, and would be left without recourse.

*Jansen* is directly on point. There, the Sixth Circuit found that "disposition of the present action without the proposed intervenors would indeed impair or impede their ability to protect their rights guaranteed under the consent decree" because the resolution of the pending litigation could leave the defendant "with obligations to the proposed intervenors under the consent decree that are inconsistent with its obligations to plaintiffs" and any finding about the consent decree would bind the proposed intervenors "in any subsequent enforcement actions." 904 F.2d at 342. Likewise, here, adjudication of CCWM's claims could preclude the Dumonts from enforcing the Settlement Agreement if it prevails on its claims that the Constitution gives it the right to obtain a government contract to perform public child welfare services and use religious eligibility criteria when performing those services to turn away qualified families headed by same-sex couples. The Dumonts have a right to intervene in this case to protect the Settlement Agreement that protects them from facing further discrimination, and defend against an inconsistent resolution in this Court of the constitutionality of the State's practice with respect to its adoption and foster care contracts.

16

**D.     No Other Party Adequately Represents the Dumonts' Interests.**

*Finally*, the Dumonts are entitled to intervene as of right because no current party adequately represents their interests.  In assessing the final prong under Rule 24(a)(2), the Sixth Circuit has explained that "proposed intervenors are 'not required to show that representation will in fact be inadequate.'"  *Grutter*, 188 F.3d at 400 (quoting *Miller*, 103 F.3d at 1247).  Instead, a proposed intervenor need only show that representation *may* be inadequate, including by showing "that the existing party who purports to seek the same outcome will not make all of the prospective intervenor's arguments."  *Id*.  The burden of showing inadequate representation "should be treated as minimal."  *Trbovich* v. *United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972).

While the existing Defendants may seek the same relief as the Dumonts and may make some of the arguments that the Dumonts would make,[3] based on the parties' positions in the *Dumont* action, and their respective papers filed in opposition to the motion for preliminary injunction in the related case of *Buck et al.*

---

[3]     For example, both may argue that there is nothing in the Free Exercise or Free Speech Clauses that entitles a private organization to force the government to offer it a contract to perform a government service even though it is unwilling to comply with the contract's terms. *See Fulton*, 922 F.3d at 158, 161 (no likelihood of success on claim that enforcing non-discrimination policy in public foster care contracts violates free exercise or free speech rights of agencies that have religious objection to complying).

v. *Gordon et al.*, 1:19-cv-00286-RJJ-PJG (W.D. Mich. 2019), the Dumonts anticipate that they will assert different arguments than the Defendants in defense of the State's practice of enforcing the non-discrimination provision in its adoption and foster care contracts with CPAs.  For example, the Dumonts will argue that allowing state-contracted, taxpayer-funded CPAs to exclude same-sex couples based on religious grounds—the relief requested by CCWM—would violate the Establishment and Equal Protection Clauses.[4]  When the *Dumont* Plaintiffs made these very arguments in *Dumont*, the State Defendants did not concur; rather, they moved to dismiss and argued against them.  *See Grutter*, 188 F.3d at 401 ("The proposed intervenors . . . have presented legitimate and reasonable concerns about whether the University will present particular defenses of the contested race-conscious admissions policies."); *Meriwether* v. *Trs. of Shawnee State Univ.*, 2019 WL 2052110, at *12 (S.D. Ohio May 9, 2019) (no adequate representation where proposed intervenors "articulated specific and reasonable concerns that [defendant] will not present their relevant defenses under Title IX, the Equal Protection Clause, and other anti-discrimination laws").

---

[4]     The Dumonts also intend to assert heightened equal protection scrutiny for discrimination against married same-sex couples, a position the State Defendants contested in *Dumont*.

## II.     IN THE ALTERNATIVE, THE COURT SHOULD EXERCISE ITS DISCRETION TO ALLOW PERMISSIVE INTERVENTION.

Should the Court determine that the Dumonts are not entitled to intervene as of right, the Court should exercise its discretion pursuant to Rule 24(b)(1) to grant permissive intervention.  Permissive intervention is appropriate where a prospective intervenor's claim or defense shares with the pending litigation "a common question of law or fact," Fed. R. Civ. P. 24(b)(1)(B), and where intervention will not "unduly delay or prejudice the adjudication of the rights of the original parties." *Purnell*, 925 F.2d at 951.  In this case, for the reasons stated above and in the Proposed Answer, both CCWM and the Dumonts raise claims or defenses related to whether the First and Fourteenth Amendments to the United States Constitution require the State to permit state-contracted CPAs to violate the contracts' non-discrimination requirement that includes sexual orientation.  Granting the Dumonts' motion to intervene will not result in delay or undue prejudice because the case is in its very early stages and proposed intervenors are prepared to proceed according to the schedule set by the Court.

### CONCLUSION

For the reasons set forth above, we respectfully ask that the Court grant the Dumonts' motion to intervene in this Action.

Dated:  July 17, 2019

Respectfully submitted,

*s/ Ann-Elizabeth Ostrager*

Jay Kaplan (P38197)
Daniel S. Korobkin (P72842)
American Civil Liberties Union
   Fund of Michigan
2966 Woodward Avenue
Detroit, MI  48201
Telephone:  (313) 578-6823
jkaplan@aclumich.org
dkorobkin@aclumich.org

Daniel Mach
American Civil Liberties Union
   Foundation
915 15th Street NW
Washington, DC  20005
Telephone:  (202) 675-2330
dmach@aclu.org

Leslie Cooper
American Civil Liberties Union
   Foundation
125 Broad Street, 18th Floor
New York, NY  10004
Telephone:  (212) 549-2633
lcooper@aclu.org

Garrard R. Beeney
Ann-Elizabeth Ostrager
Leila R. Siddiky
Jason W. Schnier
Lisa M. Ebersole
Hannah M. Lonky
James G. Mandilk
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, NY  10004-2498
Telephone:  (212) 558-4000
beeneyg@sullcrom.com
ostragerae@sullcrom.com
siddikyl@sullcrom.com
schnierj@sullcrom.com
ebersolel@sullcrom.com
lonkyh@sullcrom.com
mandilkj@sullcrom.com

*Counsel for Proposed Intervenor
Defendants*

20

## CERTIFICATE OF SERVICE

I hereby certify that on this date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

This the 17th day of July, 2019.

*s/ Ann-Elizabeth Ostrager*

21