UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CATHOLIC CHARITIES
WEST MICHIGAN,

      Plaintiff,

v.

MICHIGAN DEPARTMENT
OF HEALTH AND HUMAN
SERVICES; ROBERT GORDON,
in his official capacity as Director
of the Michigan Department of
Health and Human Services;
MICHIGAN CHILDREN'S
SERVICES AGENCY; JENNIFER
WRAYNO, in her official capacity as
Acting Executive Director of
Michigan Children's Services
Agency; DANA NESSEL, in her
official capacity as Attorney General
of Michigan,

      Defendants.

_____/

No. 2:19-CV-11661-DPH-DRG

HON. DENISE PAGE HOOD

MAG. DAVID R. GRAND

**DEFENDANTS' MOTION
FOR EXPEDITED
CONSIDERATION OF
PRELIMINARY
INJUNCTION MOTION AND
TO CERTIFY THE
QUESTION OF STATUTORY
INTERPRETATION TO THE
MICHIGAN SUPREME
COURT**

James R. Wierenga (P48946)
Attorney for Plaintiff
David, Wierenga & Lauka, PC
99 Monroe Ave., NW
Ste. 1210
Grand Rapids, MI 49503
(616) 454-3883
jim@dwlawpc.com

David A. Cortman (GA Bar #188810)
Attorney for Plaintiff
Alliance Defending Freedom
1000 Hurricane Shoals Rd. NE
Ste. D-1100
Lawrenceville, GA 30043
(770) 339-0774
dcortman@ADFlegal.org

Roger Brooks (NC Bar #16317)
Jeremiah Galus (AZ Bar #030469)
Attorneys for Plaintiff
Alliance Defending Freedom
15100 N. 90th Street
Scottsdale, AZ 85260
(480) 444-0020
rbrooks@ADFlegal.org
jgalus@ADFlegal.org

Toni L. Harris (P63111)
Elizabeth R. Husa Briggs
(P73907)
Attorneys for Defendants
Michigan Department of
Attorney General
Health, Education & Family
Services Division
P.O. Box 30758
Lansing, MI 48909
(517) 335-7603
HarrisT19@michigan.gov

**DEFENDANTS' MOTION FOR EXPEDITED CONSIDERATION OF PLAINTIFF'S PRELIMINARY INJUNCTION MOTION AND TO CERTIFY THE QUESTION OF STATUTORY INTERPRETATION TO THE MICHIGAN SUPREME COURT**

Defendants Michigan Department of Health and Human Services ("Department" or "MDHHS") Director Robert Gordon, MDHHS Children's Services Agency Executive Director Joo Yeun Chang,[1] and Michigan Attorney General Dana Nessel, through counsel, move this Court for expedited consideration of Plaintiff Catholic Charities West Michigan's pending Motion for Preliminary Injunction (ECF No. 11). Defendants also ask this Court to certify to the Michigan Supreme Court the question of the proper interpretation of 2015 Public Act 53, codified as Michigan Compiled Laws § 722.124e and § 722.124f (the "2015 Michigan law"), particularly:

> Whether the 2015 Michigan law authorizes a child placing agency (CPA) under contract with the State to provide foster care case management or adoption services, to refuse to provide state-supervised children with contracted services that conflict with the CPA's sincerely held religious beliefs.

In support of their motion, Defendants rely on the accompanying brief in support.

---

[1] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, this Notice reflects the substitution of Children's Services Agency Executive Director Joo Yeun Chang for former Acting Children's Services Agency Executive Director Jennifer Wrayno, who was named in her official capacity.

Pursuant to Local Rule 7.1(a), Defendants' counsel conferred with Plaintiff's counsel, Pursuant to Local Rule 7.1(a), Defendants' counsel conferred with Plaintiff's counsel, explained the nature of this motion and its legal basis, and requested concurrence.  Plaintiff responded: "Catholic Charities West Michigan does not oppose the request to expedite consideration of the preliminary injunction motion but still contends that motion should be considered in the Western District, as explained in Catholic Charities West Michigan's motion to change venue.   Catholic Charities West Michigan opposes the request to certify.".

Concurrent with filing this motion, Defendants filed a Notice (Brief, Exhibit 2) in *Dumont et al. v. Gordon et al.*, Case No. 17-cv-13080 (Borman, J.), notifying Judge Paul D. Borman that (i) Defendants would be filing this motion, and (ii) the *Dumont* plaintiffs served the Department with notice demanding that The Department enforce its longstanding nondiscrimination policy.  This is the same policy Catholic Charities West Michigan moved this Court to enjoin Defendants from enforcing against it.  (ECF No. 11.)

Respectfully submitted,

Dana Nessel
Attorney General

/s/ Toni L. Harris
Toni L. Harris (P63111)
Elizabeth R. Husa Briggs (P73907)
Attorneys for Defendants
Assistant Attorneys General
Health, Education & Family
Services Division
P.O. Box 30758
Lansing, MI 48909
Dated: February 20, 2020      HarrisT19@michigan.gov

## CERTIFICATE OF SERVICE (E-FILE)

I hereby certify that on February 20, 2020, I electronically filed State

Defendants' Combined Motion for Expedited Consideration of Plaintiff's

Motion for Preliminary Injunction, and to Certify the Question of

Statutory Interpretation to the Michigan Supreme Court, and Brief in

Support with the Clerk of the Court using the ECF System, which will

provide electronic copies to counsel of record.

/s/ Toni L. Harris
Toni L. Harris (P63111)
Assistant Attorney General
Attorneys for Defendants
Health, Education & Family
Services Division
P.O. Box 30758
Lansing, MI 48909
(517) 335-7603
HarrisT19@michigan.gov

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CATHOLIC CHARITIES
WEST MICHIGAN,

      Plaintiff,

v.

MICHIGAN DEPARTMENT
OF HEALTH AND HUMAN
SERVICES; ROBERT GORDON,
in his official capacity as Director
of the Michigan Department of
Health and Human Services;
MICHIGAN CHILDREN'S
SERVICES AGENCY; JENNIFER
WRAYNO, in her official capacity as
Acting Executive Director of
Michigan Children's Services
Agency; DANA NESSEL, in her
official capacity as Attorney General
of Michigan,

      Defendants.

_____/

No. 2:19-CV-11661-DPH-DRG

HON. DENISE PAGE HOOD

MAG. DAVID R. GRAND

**BRIEF IN SUPPORT OF
DEFENDANTS' MOTION
FOR EXPEDITED
CONSIDERATION OF
PLAINTIFF'S
PRELIMINARY
INJUNCTION MOTION
AND TO CERTIFY THE
QUESTION OF STATUTORY
INTERPRETATION TO THE
MICHIGAN SUPREME
COURT**

James R. Wierenga (P48946)
Attorney for Plaintiff
David, Wierenga & Lauka, PC
99 Monroe Ave., NW
Ste. 1210
Grand Rapids, MI 49503
(616) 454-3883
jim@dwlawpc.com

David A. Cortman (GA Bar #188810)
Attorney for Plaintiff
Alliance Defending Freedom
1000 Hurricane Shoals Rd. NE
Ste. D-1100
Lawrenceville, GA 30043
(770) 339-0774
dcortman@ADFlegal.org

Roger Brooks (NC Bar #16317)
Jeremiah Galus (AZ Bar #030469)
Attorneys for Plaintiff
Alliance Defending Freedom
15100 N. 90th Street
Scottsdale, AZ 85260
(480) 444-0020
rbrooks@ADFlegal.org
jgalus@ADFlegal.org

Toni L. Harris (P63111)
Elizabeth R. Husa Briggs
(P73907)
Attorneys for Defendants
Michigan Department of
Attorney General
Health, Education & Family
Services Division
P.O. Box 30758
Lansing, MI 48909
(517) 335-7603
HarrisT19@michigan.gov

**BRIEF IN SUPPORT OF DEFENDANTS'
MOTION FOR EXPEDITED CONSIDERATION OF
PLAINTIFF'S PRELIMINARY INJUNCTION MOTION
AND TO CERTIFY THE QUESTION OF STATUTORY
INTERPRETATION TO THE MICHIGAN SUPREME COURT**

**BRIEF IN SUPPORT OF DEFENDANTS'
MOTION FOR EXPEDITED CONSIDERATION OF
PLAINTIFF'S PRELIMINARY INJUNCTION MOTION
AND TO CERTIFY THE QUESTION OF STATUTORY
INTERPRETATION TO THE MICHIGAN SUPREME COURT**

Dana Nessel
Attorney General

Toni L. Harris (P63111)
Attorney for Defendants
P. O. Box 30758
Lansing, Michigan 48909
(517) 335-7603
harrist19@michigan.gov

Dated:  February 20, 2020

# TABLE OF CONTENTS

<u>Page</u>

Table of Contents ...................................................................................i

Introduction .......................................................................................... 1

Argument.............................................................................................. 9

I.    Expedited consideration of the motion for preliminary injunction is necessary to avoid subjecting the State to potentially competing obligations. ................................................... 9

II.    An authoritative decision on the interpretation of the 2015 Michigan law by Michigan's highest court is necessary to determine the nature of this case going forward and could be outcome determinative.................................................................. 11

    A.    The Michigan Supreme Court should have the opportunity to decide issues of first impression to its courts and of primary and jurisprudential significance to its citizens. ................................................................... 12

        1.    The interpretation of the 2015 Michigan law is a threshold issue at the forefront of Catholic Charities' state and federal claims. ............................. 16

        2.    The importance of asking the Michigan Supreme Court to interpret state law first is not lessened because the State removed Plaintiff's state and federal claims from the Michigan Court of Claims to this Court. ............................................................... 19

    B.    Certification of the proper interpretation of the 2015 Michigan law would clarify unsettled issues, affect the nature of this case going forward, and would not cause undue delay or prejudice...................................................... 22

Conclusion and Relief Sought ............................................................. 24

# INDEX OF AUTHORITIES

## Cases

*Am. Booksellers Found. for Free Expression v. Strickland,*
　560 F.3d 443 (6th Cir. 2009) ............................................................. 22

*Arizonans for Official English v. Arizona,*
　520 U.S. 43 (1997) .................................................................... 11, 12

*Bailey v. State Farm Fire & Cas. Co.,*
　No. 14-53-HRW, 2015 U.S. Dist. LEXIS 87744 (E.D. Ky. July 7,
　2015) .............................................................................................. 19

*Bankey v. Storer Broadcasting Co.,*
　882 F.2d 208 (6th Cir. 1989) ............................................................ 12

*Bellotti v. Baird,*
　428 U.S. 132 (1976) .......................................................................... 22

*BKB Props., LLC v. Suntrust Bank,*
　453 F. App'x 582 (6th Cir. 2011) ...................................................... 14

*Bohus v. Restaurant.com, Inc.,*
　784 F.3d 918 (3d Cir. 2015)............................................................... 21

*Cty. of Wayne v. Philip Morris, Inc.,*
　No. 99-76097, 2000 U.S. Dist. LEXIS 22956 (E.D. Mich. Aug. 25,
　2000) ...................................................................................... 11, 19, 23

*Eliason v. Clark County,*
　2019 U.S. Dist. LEXIS 48486 (USDC for Nevada 2019) ..................... 20

*Fisher v. Fisher,*
　324 N.W. 2d 582 (Mich. Ct. App. 1982) ........................................... 15

*Glover v. Nationwide Mutual Fire Ins. Co.,*
　676 F. Supp. 2d 602 (W.D. Mich. 2009) ........................................... 22

*Heimbach v. Amazon.com Inc. (In re Amazon.com),*
　942 F.3d 297 (6th Cir. 2019) .................................................. 14, 20, 21

*In re Certified Question* (*Deacon v. Pandora Media, Inc.*),
   885 N.W.2d 628 (Mich. 2016) ............................................................. 13

*In re Certified Question* (*Mattison v. Social Security Comm'r*),
   825 N.W.2d 566 (Mich. 2012) ............................................................. 13

*In re Certified Question* (*Philip Morris Inc., v. Jennifer Granholm,*
   *Attorney General, ex rel., State of Michigan*),
   638 N.W.2d 409 (Mich. 2002) ............................................................. 13

*In re Certified Question* (*Wayne Cty. v. Philip Morris, Inc.*),
   638 N.W.2d 409 (Mich. 2002) ............................................................. 11

*In re Certified Questions* (*Bankey v. Storer Broadcasting Co.*),
   443 N.W.2d 112 (Mich. 1989) ............................................................. 13

*Lehman Brothers v. Schein,*
   416 U.S. 386 (1974) ............................................................................ 22

*Lindenberg v. Jackson Nat'l Life Ins. Co.*,
   912 F.3d 348 (6th Cir. 2018) ............................................................. 24

*Murray v. Alaska Airlines, Inc.*,
   522 F.3d 920 (9th Cir. 2008) ............................................................. 20

*Planned Parenthood of Cincinnati Region v. Strickland,*
   531 F.3d 406 (6th Cir. 2008) ............................................................. 12

*Smith v. Org. of Foster Families for Equality and Reform,*
   431 U.S. 816 (1977) ............................................................................ 15

*State Auto Property & Cas. Ins. Co. v. Hargis,*
   785 F.3d 189 (6th Cir. 2015) ............................................................. 14

*Thiss v. A.O. Smith Corp.,*
   No. 1:91-CV-239, 1993 U.S. Dist. LEXIS 11846, at *6 (W.D.
   Mich. June 29, 1993 ............................................................................ 23

*Vance v. Amazon.com, Inc.,*
   852 F.3d 601 (6th Cir. 2017) ............................................................. 20

*Vitanza v. Upjohn Co.,*
   214 F.3d 73 (2d Cir. 2000) ................................................................. 20

*Wigginton v. Centracchio,*
   205 F.3d 504 (1st Cir. 2000) ................................................................. 20

## Statutes

2015 Public Act 53 ........................................................... 2, 3, 7, 24

Mich. Comp. Laws § 600.6440 ........................................................ 6, 19

Mich. Comp. Laws § 722.124e ...................................................... passim

Mich. Comp. Laws § 600.6440 ........................................................ 6, 19

Mich. Comp. Laws § 722.124e (4) ....................................................... 2

Mich. Comp. Laws § 722.124e(2) ........................................................ 2

Mich. Comp. Laws § 722.124e(7) ....................................................... 17

Mich. Comp. Laws § 722.124f ...................................................... passim

## Rules

*Cf.* L.Civ.R. 83.40(a)(2) ............................................................. 18

E.D. Mich. L.Civ.R 83.40 ......................................................... 11, 22

Mich. Ct. Rule 7.308(A)(2) ........................................................... 11

## CONCISE STATEMENT OF ISSUES PRESENTED

1.    Defendants are subject to potentially competing and contrary legal obligations to two different parties who sued or are suing the State in different courts. The first is two former plaintiffs in *Dumont et al. v. Gordon et al.*, Case No. 17-cv-13080 (E.D. Mich. Borman, J.), demanding that the Department enforce its nondiscrimination policy against Plaintiff Catholic Charities West Michigan and threatening to file an enforcement action with United States District Court Judge Borman. The second is Plaintiff Catholic Charities West Michigan requesting that this Court preliminarily enjoin Defendants from enforcing the State's nondiscrimination policy against it. Should this Court grant expedited consideration of Plaintiff's motion for preliminary injunction to avoid the risk of having different courts impose on Defendants competing and contrary legal obligations to two different parties?

2.    Federal courts have discretion to certify questions of state statutory interpretation to a state's highest court to promote cooperative judicial federalism and efficiencies and to avoid the potential for friction-generating error. Michigan courts have not had the occasion to interpret 2015 PA 53, codified as Michigan Compiled Laws §§ 722.124e and 722.124f (2015), to determine whether it authorizes state-contracted child placing agencies to refuse to provide state-supervised children with state-contracted services that conflict with an agency's sincerely held religious beliefs. Should this Court certify to the Michigan Supreme Court the question of the proper interpretation of 2015 PA 53?

# INTRODUCTION

Defendants are facing potentially competing and contrary legal obligations to two different parties who sued or are suing the State in different courts.  The first is two former plaintiffs in *Dumont et al. v. Gordon et al.*, Case No. 17-cv-13080 (E.D. Mich. Borman, J.), demanding that the Department enforce its nondiscrimination policy against Plaintiff Catholic Charities West Michigan ("Catholic Charities") and threatening to file an enforcement action with United States District Court Judge Borman.  The other is Plaintiff Catholic Charities West Michigan, seeking to preliminarily enjoin Defendants from enforcing the State's nondiscrimination policy against it.  Stuck between a rock and a hard place, Defendants respectfully requested expedited consideration of Plaintiff's motion for preliminary injunction––namely to decide whether Catholic Charities is likely to succeed on the merits of its state and federal claims under its erroneous interpretation of state law.  No state court has interpreted this statute, and an interpretation is critical before plenary litigation proceeds.

1

As for the state law at issue, the parties agree that Michigan law[1] authorizes a state-contracted child placing agency ("CPA") to reject a Michigan Department of Health and Human Services ("MDHHS" or "Department") referral of a state-supervised child needing foster care case management or adoption services for any reason, including the CPA's sincerely held religious beliefs.[2]  Michigan law also authorizes a CPA to refuse to provide private and direct adoption services that conflict with the CPA's sincerely held beliefs.[3]

But the parties are diametrically opposed on the legal issue of whether Michigan law authorizes a state-contracted CPA to refuse to provide state-supervised children in the agency's care with state-contracted foster care case management and adoption services that conflict with the CPA's sincerely held religious beliefs.   And no state court has interpreted Mich. Comp. Laws §§ 722.124e and 722.124f.

Michigan's highest state court is the proper court to have the first opportunity to interpret this important state-law question.  The proper

---

[1] The Michigan law at issue is 2015 Public Act 53, codified as Michigan Compiled Laws § 722.124e and § 722.124f.

[2] Mich. Comp. Laws § 722.124f  (2015).

[3] Mich. Comp. Laws § 722.124e(2) and (4) (2015).

interpretation is a matter of first impression, unique to Michigan, and significant to the State's jurisprudence.

Rather than predicting what the state court might do, this Court should certify to the Michigan Supreme Court the question of the proper interpretation of 2015 Public Act 53, codified as Mich. Comp. Laws §§ 722.124e and 722.124f  (the "2015 Michigan law").  Specifically, this Court should certify:

> Whether the 2015 Michigan law authorizes a child placing agency (CPA) under contract with the state to provide foster care case management or adoption services, to refuse to provide state-supervised children with contracted services that conflict with the CPA's sincerely held religious beliefs.

Certifying this question to the Michigan Supreme Court advances cooperative judicial federalism and conserves federal judicial resources. Certification also recognizes and respects the state court's authority and interest in interpreting state law in the first instance on significant state jurisprudential issues.

The Michigan Supreme Court's interpretation of the 2015 Michigan law will assist this Court in analyzing key issues in this case and could be dispositive.  Moreover, certifying this question to the

Michigan Supreme Court will not cause undue delay or prejudice, as there is a Motion for Preliminary Injunction pending before this Court.

## FACTS

On March 22, 2019, the Department entered into a settlement agreement with Dana and Kristy Dumont and Rebecca and Erin Busk-Sutton, the plaintiffs in *Dumont et al. v. Gordon et al.*, Case No. 17-cv-13080 (E.D. Mich. Borman, J.), to dispose of the claims in the litigation (the "Settlement Agreement"). (Exhibit 1.) That same day, the Department and the *Dumont* plaintiffs filed a Stipulation of Voluntary Dismissal with Prejudice, with the executed Settlement Agreement attached as Exhibit A. (*Dumont*, Case No. 17-cv-13080, ECF No. 82.) Judge Borman entered an order dismissing the *Dumont* plaintiffs' claims "with prejudice pursuant to the terms of the Settlement Agreement" and retaining jurisdiction over the enforcement of the Settlement Agreement. (*Dumont*, Case No. 17-cv-13080, ECF No. 83, PageID.1469.)

Under the terms of the Settlement Agreement, unless prohibited by law or court order, the Department is required to enforce its

4

longstanding nondiscrimination policy (Non-Discrimination Provision) against a child placing agency (CPA) "that the Department determines is in violation of, or is unwilling to comply with" the Provision, up to and including terminating the CPA's foster care case management services contract or adoption services contract.[4] (Exhibit 1, Settlement Agreement, Section 1(c).)

On April 25, 2019, Plaintiff Catholic Charities West Michigan (Catholic Charities) initiated the instant lawsuit against the Department and Michigan Attorney General Dana Nessel in her official capacity (collectively, Defendants), challenging the Department's long-established nondiscrimination policy as violative of state and federal law and the Michigan and U.S. constitutions.[5]

---

[4] The Settlement Agreement acknowledges that the Department's contracts for foster care case management services and adoption services mandate "that contracted CPAs comply with the Department's non-discrimination statement prohibiting discrimination "against any individual or group because of race, sex, religion, age, national origin, color, height, weight, marital status, gender identity or expression, sexual orientation, political beliefs, or disability" in the provision of services under contract with the Department (the "Non-Discrimination Provision").

[5] Catholic Charities West Michigan originally filed its state *and* federal claims in the Michigan Court of Claims. (Court of Claims Case No. 19-cv-000072MM, Stephens, J.) Michigan law prohibits claimants from filing claims against the State and its departments in the Court of

On June 26, 2019, Catholic Charities filed a motion for preliminary injunction, seeking to enjoin the State from taking adverse action against Catholic Charities for refusing to comply with the terms of it foster care case management services contract and adoption services contract with the Department, as well as the Non-Discrimination Provision.  (ECF No. 11.)  That motion was fully briefed as of August 7, 2019 and remains pending.  (ECF Nos. 22 and 25.)

In correspondence dated January 23, 2020 (Exhibit 2, Exh. A), the Dumonts invoked the notice and cure provision in Section 7 of the Settlement Agreement, demanding that the Department enforce the nondiscrimination provisions in its contracts with Catholic Charities, stating:

    a.    "Catholic Charities West Michigan ('Catholic Charities'), a Michigan state-contracted CPA, has made clear in its litigation against the State, *Catholic Charities* v. *Michigan Department of Health and Human Services et al.,* No. 2:l 9-cv-11661-DPHDRG (E.D. Mich.), that it will not comply with the Non-Discrimination Provision of its Contracts and that it has engaged and will continue to engage in practices prohibited by the Non-Discrimination Provision." (Exhibit 2, Exh. A, p. 1.)

---

Claims where the claimant "has an adequate remedy upon his claim in the federal courts."  Mich. Comp. Laws § 600.6440.

b.    Pursuant to Section 7 of the Settlement Agreement, the Department has ninety (90) days to cure noncompliance allegations. If the alleged breach is not cured within 90 days of notice, the Dumonts may take appropriate action to enforce their rights and seek specific performance of the Settlement Agreement. (Exhibit 2, Exh. A, p. 2.)

Defendants believe the Settlement Agreement comports with state and federal law and is constitutionally firm.  They are defending the Non-Discrimination Provision in the instant case.

The Dumonts' January 23, 2020 demand letter and Catholic Charities' motion for preliminary injunction seek to impose potentially competing obligations on the Department.  This tension necessitates expedited consideration of Catholic Charities' motion for preliminary injunction.  Otherwise, Defendants will be subject to two separate lawsuits pending before different judges in the same district court. Each judge could reach different conclusions as to the main issue– whether 2015 Public Act 53, Mich. Comp. Laws §§ 124e and 124f (2015 Michigan law), authorizes a child placing agency under contract with the State to provide foster care case management or adoption services, to refuse to provide state-supervised children with contracted services that conflict with the CPA's sincerely held religious beliefs.

7

Michigan courts have not had occasion to interpret the 2015 Michigan law.  In another case filed by St. Vincent Catholic Charities against Defendants (*Buck et al. v. Gordon et al.*, Case No. 1:19-cv-00286 (Jonker, J.))[6], pending in the Western District of Michigan, Defendants asked Judge Jonker certify the following question of state law interpretation to the Michigan Supreme Court:

> Whether the 2015 Michigan law authorizes a child placing agency (CPA) under contract with the State to provide foster care case management or adoption services, to refuse to provide state-supervised children with contracted services that conflict with the CPA's sincerely held religious beliefs.  [*Buck*, E.D. Mich. Case No. 1:19-cv-00286, ECF Nos. 87 and 88.]

Defendants' certification motion in *Buck* is fully briefed and remains pending before Judge Jonker.[7]  Defendants ask this Court to certify this same question to the Michigan Supreme Court.

---

[6] Chad and Melissa Buck and Shamber Flore, the individual plaintiffs in *Buck v. Gordon*, were dismissed as plaintiffs for lack of standing. (*Buck*, E.D. Mich. Case No. 1:19-cv-00286, ECF No. 70.)

[7] Judge Jonker granted St. Vincent's motion for preliminary injunction, enjoining Defendants from enforcing the State's non-discrimination policy if St. Vincent refuses to provide state-contracted services to state-supervised children if such services conflict with its sincerely held religious beliefs.  (*Buck*, E.D. Mich. Case No. 1:19-cv-00286, ECF No. 69.)  Defendants appealed, and the Sixth Circuit denied Defendants' motion to stay the injunction pending appeal.  (*Buck v. Gordon*, Sixth Cir. Case No. 19-2185, Docs. 29).  Defendants moved to voluntarily

Concurrent with filing this motion, Defendants filed a Notice

(Brief, Exhibit 2) in *Dumont et al. v. Gordon et al.*, Case No. 17-cv-13080

(Borman, J.), notifying Judge Paul D. Borman (i) that Defendants would

be filing this motion, and (ii) that the *Dumont* plaintiffs served notice on

the Department, demanding that it enforce its longstanding

nondiscrimination policy—the same policy that Catholic Charities West

Michigan moved this Court to enjoin Defendants from enforcing against

Catholic Charities.  (ECF No. 11.)

## ARGUMENT

I.  **Expedited consideration of the motion for preliminary injunction is necessary to avoid subjecting the State to potentially competing obligations.**

The Department fully intends to continue enforcing its long-

established nondiscrimination policy in accordance with the 2015

Michigan law.  But the Department is faced with a dilemma of

potentially competing and contrary legal obligations.  It is a named

defendant in a separate lawsuit—also pending in this district—where it

---

dismiss the appeal to file a motion to certify the question of statutory interpretation and, thereafter, hasten a decision on the merits. *Id.*, Docs. 33 and 38.  St. Vincent opposed voluntarily dismissal, and the motion remains pending. *Id.*, Doc. 34.

executed the Settlement Agreement and agreed to continue enforcing its long-established nondiscrimination policy. (*Buck et al. v. Gordon et al.*, Case No. 1:19-cv-00286 (Jonker, J.)). Kristy and Dana Dumont, two of the plaintiffs in that case, allege the Department is not complying with the Settlement Agreement and demand the Department enforce its nondiscrimination policy against Catholic Charities for refusing to comply based on statements in its Complaint in this case. (Exhibit 2.) The Dumonts indicate that they may seek to re-open the *Dumont* case and file an enforcement action under the Settlement Agreement. (Exhibit 2.) Meanwhile, Catholic Charities' motion for preliminary injunction is pending and seeks to preliminarily enjoin the Defendants from enforcing the nondiscrimination policy.

These potentially competing and contrary legal obligations put the Department between a rock and a hard place. This Court's expedited decision on the preliminary injunction motion will guide the Department's conduct and minimize the risk of violating one court's order. Consequently, Defendants respectfully request that this Court grant expedited consideration of the motion.

**II.    An authoritative decision on the interpretation of the 2015 Michigan law by Michigan's highest court is necessary to determine the nature of this case going forward and could be outcome determinative.**

Both federal and state courts recognize that a proper adjudication of a federal case may first require a state to authoritatively interpret its own law. *See, e.g., Cty. of Wayne v. Philip Morris, Inc.*, No. 99-76097, 2000 U.S. Dist. LEXIS 22956 (E.D. Mich. Aug. 25, 2000) (Exhibit 3); *In re Certified Question (Wayne Cty. v. Philip Morris, Inc.)*, 638 N.W.2d 409 (Mich. 2002). This Court's local court rules, as well as the Michigan Court Rules, facilitate cooperation between federal and state courts by providing mechanisms to request and accept certified questions of state law. *See* E.D. Mich. L.Civ.R 83.40; Mich. Ct. Rule 7.308(A)(2).

Certification benefits federal courts because it "save[s] time, energy, and resources and help[s] build a cooperative judicial federalism." *Arizonans for Official English v. Arizona*, 520 U.S. 43, 77 (1997) (internal citation omitted). Moreover, "[s]ubmitting uncertain questions of state law to the state's highest court by way of certification acknowledges that court's status as the final arbiter on matters of state law and avoids the potential for 'friction-generating error' which exists whenever a federal court construes a state law in the absence of any

11

direction from the state courts." *Planned Parenthood of Cincinnati Region v. Strickland*, 531 F.3d 406, 410 (6th Cir. 2008) (quoting *Arizonans for Official English*, 520 U.S. at 79).   Both principles apply here and warrant certifying the first-time question of the 2015 Michigan law's interpretation to the Michigan Supreme Court.

> ### A.   The Michigan Supreme Court should have the opportunity to decide issues of first impression to its courts and of primary and jurisprudential significance to its citizens.

The importance of the 2015 Michigan law's proper interpretation in this case cannot be overstated.  The U.S. Supreme Court and the Sixth Circuit have recognized that importance.  *See, e.g.*, *Arizonans for Official English*, 520 U.S. at 77; *Bankey v. Storer Broadcasting Co.*, 882 F.2d 208, 210 (6th Cir. 1989) (Sixth Circuit unanimously certified question where the interpretation "proffered by appellant presents a question of Michigan law that is not controlled by Michigan Supreme Court precedent.")  Equally important is providing Michigan state courts the first opportunity to decide significant issues of state jurisprudence by interpreting state laws involving issues of state

concern—in this case, children under the State's care and supervision and in need of foster care case management and adoption services.

Similar to federal courts' recognition of the value of certified questions, the Michigan Supreme Court also recognizes the importance of accepting a certified question. And it has accepted certified questions in cases like this, which present the "opportunity to clarify an important aspect of Michigan [] law," and provide "practical guidance and certainty" for Michigan citizens.[8]  *See In re Certified Questions* (*Bankey v. Storer Broadcasting Co.*), 443 N.W.2d 112, 114, n.4 (Mich. 1989) (accepting certified question in an employment law case because it would  "resolve some of the uncertainty" concerning the scope of an exception to Michigan's at-will doctrine).

---

[8] The Michigan Supreme Court accepts certified questions from both federal district courts and the federal courts of appeal.  *See In re Certified Question* (*Mattison v. Social Security Comm'r*), 825 N.W.2d 566, 567 (Mich. 2012) (certifying question from the U.S. District Court for the Western District of Michigan); *In re Certified Question* (*Philip Morris Inc., v. Jennifer Granholm, Attorney General, ex rel., State of Michigan*), 638 N.W.2d 409 (Mich. 2002) (certifying question from the U.S. District Court for the Eastern District of Michigan); *In re Certified Question* (*Deacon v. Pandora Media, Inc.*), 885 N.W.2d 628 (Mich. 2016) (certifying question from the U.S. Court of Appeals for the Ninth Circuit).

Now is the appropriate time to present this certified question. The parties' briefing on preliminary injunction relief and other matters is complete.  Neither federal judicial resources nor the parties' time or resources has been expended on discovery and dispositive briefing prior to a final adjudication on the issues in this case.  *See Heimbach v. Amazon.com Inc. (In re Amazon.com),* 942 F.3d 297, 300 (6th Cir. 2019) (time to request certification is before the district court has resolved the issue*); State Auto Property & Cas. Ins. Co. v. Hargis*, 785 F.3d 189, 194 (6th Cir. 2015) (certification disfavored when it is sought only after the district court has entered an adverse ruling on summary judgment); see also *BKB Props., LLC v. Suntrust Bank*, 453 F. App'x 582, 588 (6th Cir. 2011) (denying request for certification where movant failed to request certification in the district court, "resulting in the considerable expenditure of judicial resources by the federal courts on the issue.").

Another important consideration is that a proper interpretation of the 2015 Michigan law is of significant interest to the State.  Foster care legislation presents "issues of unusual delicacy, … where professional judgments regarding desirable procedures are constantly and rapidly changing[]" and warrants federal judicial restraint.  *Smith*

*v. Org. of Foster Families for Equality and Reform,* 431 U.S. 816, 855–56 (1977).   Additionally, Michigan courts recognize that "[t]he care and protection of children has long been a matter of utmost state concern," even when faced with allegations that state laws intended to facilitate care and protection of children contradict the free exercise of religion. *Fisher v. Fisher,* 324 N.W. 2d 582, 584 (Mich. Ct. App. 1982). Certifying the question of the 2015 Michigan law's interpretation will allow the Michigan Supreme Court to determine whether the statute authorizes CPAs to refuse to provide state-supervised children with state-contracted services that conflict with their sincerely held religious beliefs.

No Michigan state court has spoken on the proper interpretation of the 2015 Michigan law.  The Michigan Supreme Court should have the first opportunity to interpret this important statute, and the posture of this case presents an opportune time to do that.  If the Michigan Supreme Court interprets the 2015 Michigan law as proposed by Catholic Charities, then this Court may not need to reach the constitutional issues presented.  If, however, the Michigan Supreme Court interprets the 2015 Michigan law as MDHHS does, then the

15

nature of this case could significantly change.  In either scenario, the clarification would resolve a crucial issue in this case, which in turn would allow the case to proceed in a much more efficient manner.

### 1.   The interpretation of the 2015 Michigan law is a threshold issue at the forefront of Catholic Charities' state and federal claims.

The proper interpretation of the 2015 Michigan law is at the heart of Catholic Charities' state and federal claims.   Michigan courts have not considered this important issue of state law, and the importance of having the State's highest court interpret state law in the first instance cannot be overstated.

Count I of the Complaint alleges that Defendants violate the 2015 Michigan law by enforcing the State's longstanding nondiscrimination policy if Catholic Charities refuses to provide state-supervised children with state-contracted services that conflict with its sincerely held religious beliefs.  (Compl., ECF No. 1-2, PageID.51.)  And Catholic Charities describes the 2015 Michigan law as providing "proper protection" for its First Amendment rights.   (PI Mot., ECF No. 11, PageID.609).  Thus, the question of proper interpretation cannot be separated from Catholic Charities' federal claims.

Yet, throughout its Complaint and in briefs filed in support of its motion for preliminary injunction, Catholic Charities misinterprets and misapplies the 2015 Michigan law.  Specifically, Catholic Charities claims that the 2015 Michigan law "protects" the agency from adverse action by the Department in the event Catholic Charities refuses to provide contracted-services to state-supervised children in care.  (*See, e.g.*, Compl., ECF No. 1-2, PageID.41, ¶102  ["Generally, under these laws, a 'child placing agency'…cannot be required to provide services . . . ."]; PI Mot., ECF No. 11, PageID.603-604  ["Under these laws, a 'child placing agency' cannot be forced to provide services . . . that conflict with its 'sincerely held religious beliefs.'"]).  But Plaintiff's interpretation is fatally flawed because it ignores the definition of "services" in Mich. Comp. Laws § 722.124e(7), which expressly excludes state-contracted foster care case management and adoption services from the services that an agency can refuse to provide if in conflict with its sincerely held religious beliefs.  Thus, an agency can refuse to provide private and direct placement services that conflict with its sincerely held religious beliefs—not state-contracted services for state-supervised children in its care.  *See* Mich. Comp. Laws § 722.124e.

In summary, the 2015 Michigan law allows a CPA to reject the Department's referral of a child or individual in need of foster care case management or adoption services. But the 2015 Michigan law does not allow a CPA to refuse state-contracted services for those children for whom the child-placing agency accepted the Department's referral. (*See* Resp. to PI Mot., ECF No. 22, PageID.931-33, 935-36.) To avoid this Court speculating on how state courts might rule on this important state law question involving a significant matter of state jurisprudence, the Michigan Supreme Court should be given the opportunity to decide this state law question first.

Because the proper interpretation of the 2015 Michigan law is at the forefront of this federal case and may control the outcome or, at the very least, impact the nature of this case as the parties proceed on the merits. *Cf.* L.Civ.R. 83.40(a)(2). This Court should grant the Defendants' Motion.

> 2. **The importance of asking the Michigan Supreme Court to interpret state law first is not lessened because the State removed Plaintiff's state and federal claims from the Michigan Court of Claims to this Court.**

As explained above, Catholic Charities originally filed its Complaint—which asserts violations of state and federal law—in the Michigan Court of Claims.  (Court of Claims Case No. 19-cv-000072MM.)  The case was assigned to Judge Cynthia Stephens.  Rather than dismissing the federal claims under Mich. Comp. Laws § 600.6440 and litigating Catholic Charities' state claims in state court and its federal claims in federal court, Defendants removed the case to this Court (ECF No. 1).  But "removal does not foreclose the opportunity to seek certification[.]" *Bailey v. State Farm Fire & Cas. Co.*, No. 14-53-HRW, 2015 U.S. Dist. LEXIS 87744 (E.D. Ky. July 7, 2015) (denying certification sought *after* receiving an unfavorable decision on a dispositive motion).  (Exhibit 4.)

Federal courts—including this Court—regularly certify questions of state law in cases, like this one, that are properly removed to federal court.  *See, e.g., Cty. of Wayne v. Philip Morris, Inc.*, 2000 U.S  Dist LEXIS 22956, at *5 (Borman, J.) (granting certification after the case

was removed from Wayne County Circuit Court to the United States District Court for the Eastern District of Michigan) (Exhibit 3); *Eliason v. Clark County*, 2019 U.S. Dist. LEXIS 48486 (USDC for Nevada 2019)(granting defendant's motion to certify after co-defendant removed case) (Exhibit 5); *Wigginton v. Centracchio,* 205 F.3d 504, 507-08, 518 (1st Cir. 2000) (granting plaintiff's motion to certify after removal based on federal question jurisdiction); *Vitanza v. Upjohn Co.*, 214 F.3d 73, 75 (2d Cir. 2000) (certifying question at plaintiff's request after removal based on diversity jurisdiction); *Murray v. Alaska Airlines, Inc.*, 522 F.3d 920, 922-24 (9th Cir. 2008) (certifying question at plaintiff's request after removal based on diversity jurisdiction).

Unlike in *Bailey*, Defendants' request for certification here is timely, as no issues in this case have been adjudicated on the merits. Indeed, the Sixth Circuit has repeatedly held that "the appropriate time for a party to seek certification of a state-law issue is before, not after the district court has resolved the issue." *Vance v. Amazon.com, Inc.*, 852 F.3d 601, 607 (6th Cir. 2017) (internal citations and quotations omitted). *See also*, *Heimbach v. Amazon.com, Inc.*, 942 F.3d 297, 300 (6th Cir. 2019) (granting a timely filed motion to certify and pointing to

the timely filing as a distinction with an earlier case involving a similar question, but presented in a belated motion to certify. *Heimbach v. Amazon.com, Inc.*, 942 F.3d 297, 300 (6th Cir. 2019).

Furthermore, certification remains available and appropriate in the event this Court declines to exercise supplemental jurisdiction over Catholic Charities' state law claims. Although the Michigan Supreme Court's decision on the certified question will not adjudicate Catholic Charities' state law claims, its answer will provide an authoritative interpretation of a controlling legal issue, i.e., the 2015 Michigan law, relevant to Plaintiff's federal claims. *See Bohus v. Restaurant.com, Inc.*, 784 F.3d 918, 925-26 (3d Cir. 2015) (explaining that the answer to a certified question decides a controlling issue of state law but does not independently resolve a dispute in federal litigation).

In summary, that this case was removed from state court to federal court has no bearing on whether certification of a state law question is appropriate or available. Because the proper interpretation of the 2015 Michigan law will likely control the outcome of Catholic Charities' state and federal claims, this Court should exercise its discretion and grant Defendants' motion to certify.

**B.**   **Certification of the proper interpretation of the 2015 Michigan law would clarify unsettled issues, affect the nature of this case going forward, and would not cause undue delay or prejudice.**

Certification rests in the discretion of this Court.  *See* E.D. Mich. L.Civ.R 83.40; *Glover v. Nationwide Mutual Fire Ins. Co.*, 676 F. Supp. 2d 602, 622 (W.D. Mich. 2009) (citing *Lehman Brothers v. Schein,* 416 U.S. 386, 390–91 (1974)).  And this Court should exercise its discretion to certify the question to the Michigan Supreme Court for three reasons.

First, there is no authoritative interpretation of the 2015 Michigan law on which this Court can rely, leaving it to predict how Michigan courts would decide the issue.  And, the state court's interpretation of its own law is important here.  An authoritative interpretation of the 2015 Michigan law from the Michigan Supreme Court could "avoid in whole or in part the necessity for federal constitutional adjudication" of Catholic Charities' federal claims because the Department is required to follow state law.  *Am. Booksellers Found. for Free Expression v. Strickland*, 560 F.3d 443, 446 (6th Cir. 2009) (quoting *Bellotti v. Baird*, 428 U.S. 132 (1976)).

Federal courts in the Sixth Circuit, faced with unsettled questions of interpretation of state law, have recognized the value of allowing the

Michigan Supreme Court to carry out its appropriate role of interpreting Michigan law. *See, e.g.*, *Cty. of Wayne v. Philip Morris, Inc.*, 2000 U.S  Dist LEXIS 22956, at *7 (certifying question concerning the scope of a Michigan official's authority because there was no controlling precedent) (Exhibit 3); *Thiss v. A.O. Smith Corp.*, No. 1:91-CV-239, 1993 U.S. Dist. LEXIS 11846, at *6 (W.D. Mich. June 29, 1993) (certifying question where district court had no basis to predict the course of state law on what was "essentially a policy decision between competing doctrines.") (attached as Exhibit 6).

Second, the Michigan Supreme Court's interpretation of the 2015 Michigan law could affect the outcome of this case, or at least materially change the nature of the issues.  Even if having an authoritative interpretation does not completely dispose of the case, it would likely significantly narrow the issues to be decided by this Court.

Third, certification will not cause undue delay or prejudice.  Any risk of delay is mitigated by having a proper interpretation of the 2015 Michigan law, which will conserve this Court's "time, energy, and resources." *Lindenberg v. Jackson Nat'l Life Ins. Co.*, 912 F.3d 348, 371

(6th Cir. 2018) (quoting *Lehman Bros.* 416 U.S. at 391) (internal citation and quotation marks omitted)).

In deciding Catholic Charities' motion for preliminary injunction, this Court will determine whether Plaintiff is likely to succeed on the merits of its claims *based on its proposed interpretation of the 2015 Michigan law*. But this Court's decision on the preliminary injunctive motion is not a decision on the merits of the case. Whether preliminary injunctive relief is granted, plenary litigation will proceed. And the interpretation of the 2015 Michigan law will play a pivotal role. Certifying the question of statutory interpretation now, rather than later, will avoid undue delay or prejudice and allow the parties to get to the merits of the case quicker and more efficiently.

## CONCLUSION AND RELIEF SOUGHT

For the reasons stated in their motion and this brief in support, Defendants respectfully request that grant expedited consideration of Catholic Charities' motion for preliminary injunction, and certify to the Michigan Supreme Court the proper interpretation of 2015 PA 53, codified as Michigan Compiled Laws § 722.124e and § 722.124f.

24

Respectfully submitted,

Dana Nessel
Attorney General


*/s/Toni L. Harris*
Toni L. Harris (P63111)
Assistant Attorney General
Attorney for Defendants
P. O. Box 30758
Lansing, Michigan 48909
(517) 335-7603
harrist19@michigan.gov

Dated:  February 20, 2020

## CERTIFICATE OF SERVICE (E-FILE)

I hereby certify that on February 20, 2020, I electronically filed Brief in  Support of Defendant' Motion for Expedited Consideration of Plaintiff's Preliminary Injunction Motion and to Certify the Question of Statutory Interpretation to the Michigan Supreme Court with the Clerk of the Court using the ECF System, which will provide electronic copies to counsel of record.

/s/ Toni L. Harris
Toni L. Harris (P63111)
Assistant Attorney General
Attorneys for Defendants
Health, Education & Family
Services Division
P.O. Box 30758
Lansing, MI 48909
(517) 335-7603
HarrisT19@michigan.gov