UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CATHOLIC CHARITIES
WEST MICHIGAN,

     Plaintiff,

                         2:19-CV-11661-DPH-DRG

v.                            Hon. Denise Page Hood

                            Hon. David R. Grand

MICHIGAN DEPARTMENT
OF HEALTH AND HUMAN
SERVICES; ROBERT GORDON, in
his official capacity as Director
of the Michigan Department of
Health and Human Services;
MICHIGAN CHILDREN'S
SERVICES AGENCY; JENNIFER
WRAYNO, in her official capacity as
Acting Executive Director of
Michigan Children's Services Agency;
DANA NESSEL, in her official
capacity as Attorney General of
Michigan,

     Defendants.

**CATHOLIC CHARITIES
WEST MICHIGAN'S
RESPONSE TO
DEFENDANTS' MOTION
FOR EXPEDITED
CONSIDERATION OF
PRELIMINARY
INJUNCTION MOTION AND
TO CERTIFY THE
QUESTION OF STATUTORY
INTERPRETATION TO THE
MICHIGAN SUPREME
COURT**

_____/

James R. Wierenga (P48946)
Attorney for Plaintiff
David, Wierenga & Lauka, PC
99 Monroe Ave., NW
Ste. 1210
Grand Rapids, MI 49503
(616) 454-3883
jim@dwlawpc.com

David A. Cortman (GA Bar #188810)
Attorney for Plaintiff
Alliance Defending Freedom
1000 Hurricane Shoals Rd. NE
Ste. D-1100
Lawrenceville, GA 30043
(770) 339-0774
dcortman@ADFlegal.org

Roger Brooks (NC Bar #16317)
Jeremiah Galus (AZ Bar #030469)
Ryan Tucker (AZ Bar # 034382)
Attorneys for Plaintiff
Alliance Defending Freedom
15100 N. 90th Street
Scottsdale, AZ 85260
(480) 444-0020
rbrooks@ADFlegal.org
jgalus@ADFlegal.org
rtucker@ADFlegal.org

Toni L. Harris (P63111)
Elizabeth R. Husa Briggs
(P73907)
Attorneys for Defendants
Michigan Department of
Attorney General
Health, Education & Family
Services Division
P.O. Box 30758
Lansing, MI 48909
(517) 335-7603
HarrisT19@michigan.gov

_____/

**CATHOLIC CHARITIES WEST MICHIGAN'S RESPONSE TO
DEFENDANTS' MOTION FOR EXPEDITED CONSIDERATION
OF PRELIMINARY INJUNCTION MOTION AND TO CERTIFY
THE QUESTION OF STATUTORY INTERPRETATION TO THE
MICHIGAN SUPREME COURT**

## TABLE OF CONTENTS

INDEX OF AUTHORITIES ........................................................................ii

CONCISE STATEMENT OF ISSUES PRESENTED ............................. v

CONTROLLING OR MOST APPROPRIATE AUTHORITY ................. vi

INTRODUCTION ................................................................................... 1

ARGUMENT ......................................................................... 3

    I.    This Court should grant the motion for expedited consideration and quickly issue a preliminary injunction. ........ 3

    II.   This Court should deny the motion to certify. ............................ 5

        A.    The state laws are straightforward and can be interpreted by this Court .................................................... 6

        B.    The First Amendment independently bars Defendants' new policy. ................................................... 10

        C.    Defendants removed this case to federal court and seek a return to state court only after adverse rulings by the Western District and the Sixth Circuit. .............................................................................. 11

        D.    Certification would be inappropriate without a preliminary injunction ...................................................... 12

CONCLUSION ..................................................................................... 13

i

# INDEX OF AUTHORITIES

## Cases

*Buck v. Gordon*,
    No. 1:19-CV-286, 2019 WL 4686425 (W.D. Mich.
    Sept. 26, 2019) ................................................................. 4, 10, 11

*Cantwell v. University of Massachusetts*,
    551 F.2d 879 (1st Cir. 1977) ........................................................ 12

*City of Columbus v. Hotels.com, L.P.*,
    693 F.3d 642 (6th Cir. 2012) ........................................................ 12

*City of Houston v. Hill*,
    482 U.S. 451 (1987) ....................................................................... 9

*Colonial Park Country Club v. Joan of Arc*,
    746 F.2d 1425 (10th Cir. 1984) .............................................. 11–12

*Enfield ex rel. Enfield v. A.B. Chance Co.*,
    228 F.3d 1245 (10th Cir. 2000) .................................................... 12

*Fidelity Union Trust Co. v. Field*,
    311 U.S. 169 (1940) ..................................................................... 10

*Fulton v. City of Philadelphia*,
    922 F.3d 140 (3d Cir. 2019), *cert. granted*, 2020 WL 871694
    (U.S. Feb. 24, 2020) (No. 19-123) .............................................. 2, 5

*Glover v. Nationwide Mutual Fire Insurance Co.*,
    676 F. Supp. 2d 602 (W.D. Mich. 2009) ..................................... 6, 9

*Jones v. Coleman*,
    848 F.3d 744 (6th Cir. 2017) ....................................................... 13

*Local 219 Plumbing & Pipefitting Industry Pension Fund v.*
    *Buck Consultants, LLC*,
    311 F. App'x 827 (6th Cir. 2009) .................................................. 11

*Malpass v. Department of Treasury*,
   833 N.W.2d 272 (Mich. 2013) ............................................................. 7

*Passaro v. Virginia*,
   935 F.3d 243 (4th Cir. 2019) ............................................................. 11

*Pennington v. State Farm Mutual Automobile Insurance Co.*,
   553 F.3d 447 (6th Cir. 2009) ............................................................. 6

*Perkins v. Clark Equipment Co., Melrose Division*,
   823 F.2d 207 (8th Cir. 1987) ............................................................. 12

*Seaboard Surety Co. v. Garrison, Webb & Stanaland, P.A.*,
   823 F.2d 434 (11th Cir. 1987) ............................................................. 11

*Sims Buick-GMC Truck, Inc. v. General Motors LLC*,
   876 F.3d 182 (6th Cir. 2017) ............................................................. 7

*State Auto Property & Casualty Insurance Co. v. Hargis*,
   785 F.3d 189 (6th Cir. 2015) ............................................................. 7

*Thompson v. Paul*,
   547 F.3d 1055 (9th Cir. 2008) ............................................................. 12

*Yates v. Ortho-McNeil-Janssen Pharmaceuticals, Inc.*,
   808 F.3d 281 (6th Cir. 2015) ............................................................. 9–10

**Rules**

E.D. Mich. LR 83.40(a)(3) ............................................................. 12

**Statutes**

Mich. Comp. Laws § 400.5a ............................................................. 2

Mich. Comp. Laws § 710.23g..........................................................................2

Mich. Comp. Laws § 722.124e....................................................................2, 8

Mich. Comp. Laws § 722.124f ......................................................................2

## CONCISE STATEMENT OF ISSUES PRESENTED

1.  Whether expedited review of Catholic Charities West Michigan's pending motion for preliminary injunction is warranted because Proposed-Intervenors (the Dumonts) have invoked a separate settlement agreement between the State and the Dumonts to force the State to take adverse action against Catholic Charities?

2.  Whether the delay and expense caused by the certification process are warranted when both the meaning and purpose of the relevant state laws are clear, the Sixth Circuit has expressed that Catholic Charities is likely to succeed on the merits of its federal constitutional claims, and Defendants voluntarily removed this case to federal court over eight months ago?

## CONTROLLING OR MOST APPROPRIATE AUTHORITY

*City of Columbus v. Hotels.com, L.P.*,
    693 F.3d 642 (6th Cir. 2012)

*Glover v. Nationwide Mutual Fire Insurance Co.*,
    676 F. Supp. 2d 602 (W.D. Mich. 2009)

*Local 219 Plumbing & Pipefitting Industry Pension Fund v.*
    *Buck Consultants, LLC*,
    311 F. App'x 827 (6th Cir. 2009)

*Pennington v. State Farm Mutual Automobile Insurance Co.*,
    553 F.3d 447 (6th Cir. 2009)

*Sims Buick-GMC Truck, Inc. v. General Motors LLC*,
    876 F.3d 182 (6th Cir. 2017)

*State Auto Property & Casualty Insurance Co. v. Hargis*,
    785 F.3d 189 (6th Cir. 2015)

## INTRODUCTION

Catholic Charities West Michigan has been serving Michigan's foster children for over 70 years. But in April 2019, Defendants demanded that Catholic Charities recommend same-sex couples as foster and adoptive parents and halt its practice of referring such couples to nearby child-placing agencies. Only if Catholic Charities agreed to violate its religious beliefs would Defendants refrain from terminating Catholic Charities' foster-care and adoption contracts—an action that would destroy its decades-long ministry to foster children.

Catholic Charities sought protection in the Michigan Court of Claims, asserting both state and federal claims and moving for a preliminary injunction. Defendants removed the case from state court in June 2019.[1] Over eight months later, Defendants wish to go back to state court, asking this Court to certify to the Michigan Supreme Court the interpretation of the state's statutory protections for faith-based foster care and adoption providers. They also ask for expedited consideration of Catholic Charities' pending preliminary injunction motion, given that Proposed-Intervenors Kristy and Dana Dumont have since moved to reopen *Dumont v. Gordon*, No. 2:17-cv-13080 (E.D. Mich.), for the express purpose of forcing the State to take adverse action against Catholic Charities.

---

[1] Defendants improperly removed the case to this Court instead of the Western District. *See* Mot. to Change Venue, ECF No. 9.

The request for expedited consideration should be granted, but the request for certification should be denied.

Put simply, the Dumonts' recent actions require a quick ruling on the preliminary injunction motion. And a preliminary injunction no longer appears to be seriously contested because it would eliminate the State's exposure to competing legal obligations while preserving the status quo as it has been for over 70 years. What is more, the Sixth Circuit last week issued an order stating that First Amendment claims like Catholic Charities' claims here have "a likelihood of success on appeal." Order at 3, *Buck v. Gordon*, No. 19-2185 (6th Cir. Feb. 27, 2020), attached as Ex. 1. And the U.S. Supreme Court recently granted certiorari in *Fulton v. City of Philadelphia*, a case involving similar legal issues.[2] These recent events strongly support a preliminary injunction.

Certification, on the other hand, is improper for at least three reasons. First, the meaning and purpose of the state's statutory protections for faith-based providers—i.e., Public Acts 53, 54, and 55 (codified as Mich. Comp. Laws §§ 722.124e, 722.124f, 710.23g, and 400.5a)—are plain and can be determined by this Court. Next, Catholic Charities also asserts federal constitutional claims, meaning this Court could enjoin the challenged policy without referencing state law.

---

[2] 922 F.3d 140 (3d Cir. 2019), *cert. granted*, 2020 WL 871694 (U.S. Feb. 24, 2020) (No. 19-123)

Finally, if Defendants wanted to litigate the state law issue in state court, they should have refrained from removal. The certification process is not a tool for forum-shopping, and it is all too convenient that Defendants' certification request follows federal court rulings holding that their new policy likely violates the First Amendment.

## ARGUMENT

### I.   This Court should grant the motion for expedited consideration and quickly issue a preliminary injunction.

To be clear, Catholic Charities and Defendants were willing and able to maintain the status quo while this Court considered the many motions pending before it. But nonparties to this case—Proposed-Intervenors Kristy and Dana Dumont—want conflict, not cooperation. On the same day the Supreme Court granted certiorari in *Fulton*, a case involving the exclusion of a faith-based provider from Philadelphia's foster care system, the Dumonts moved to reopen *Dumont v. Gordon*, No. 2:17-cv-13080 (E.D. Mich.). Invoking that case's settlement agreement, the Dumonts are demanding that Judge Borman force the State to take adverse action against Catholic Charities—not for any alleged violation of Defendants' policy, but for expressing its religious beliefs during this litigation. *See, e.g.*, ECF No. 40-5 at 2 (PageID.1832) (arguing that the State must take adverse action against Catholic Charities based on statements made "in its litigation against the State").

Fortunately, this Court can defuse the impending conflict. A preliminary injunction will not only protect Catholic Charities from adverse action, allowing it to continue its ministry to Michigan's foster children while this litigation proceeds, but it will also ensure the State faces no competing obligation under the *Dumont* settlement agreement. Indeed, that agreement clarifies that its requirements apply "*[u]nless* prohibited by law or court order.*" Settlement Agreement at 2, ECF No. 1-2 (PageID.193) (emphasis added).

Two other developments support a preliminary injunction.

First, the Western District temporarily enjoined the State from enforcing its new policy against St. Vincent Catholic Charities. *Buck v. Gordon*, No. 1:19-CV-286, 2019 WL 4686425 (W.D. Mich. Sept. 26, 2019). The Sixth Circuit denied the State's request to stay that injunction pending appeal, *see* Order, *Buck v. Gordon*, No. 19-2185 (6th Cir. Nov. 19, 2019), attached as Ex. 2, and then granted the State's later request to dismiss its appeal. In so doing, the Sixth Circuit noted that the preliminary injunction would "remain in effect" throughout the litigation and thus guarantee that "St. Vincent will remain protected." Ex. 1, Order at 2. Moreover, in evaluating whether dismissal would be improper because "lower courts" might "benefit from [its] immediate consideration of the issue," the Sixth Circuit declared that its order "denying a stay" was a "signal to other courts that St. Vincent's position has a likelihood of success on appeal." Ex. 1, Order at 2, 3.

4

Second, the cases that Defendants mainly relied on in opposing a preliminary injunction have been called into serious doubt on appeal. For instance, in *New Hope Family Services, Inc. v. Poole*, the Second Circuit issued a temporary injunction pending appeal of the lower court's ruling, concluding that the faith-based adoption provider there "may succeed on the merits of its appeal" and that "the equities warrant" a preliminary injunction. *See* Order at 4–5, *New Hope Family Servs.*, No. 19-1715 (2d Cir. Nov. 4, 2019), attached as Ex. 3.

And in *Fulton v. City of Philadelphia*, the U.S. Supreme Court agreed to review the Third Circuit's decision that a city could legally exclude a faith-based provider from its foster care system for adhering to its religious beliefs about marriage. *See Fulton*, 922 F.3d 140 (3d Cir. 2019), *cert. granted*, 2020 WL 871694 (U.S. Feb. 24, 2020) (No. 19-123). The Supreme Court will thus soon decide similar constitutional issues to those presented here; this too supports a preliminary injunction.

## II.   This Court should deny the motion to certify.

More than eight months after voluntarily removing this case to federal court, Defendants ask this Court to certify to the Michigan Supreme Court the question whether state law allows a child-placing agency "under contract with the State . . . to refuse to provide state-supervised children with contracted services that conflict with the [agency's] sincerely held religious beliefs." ECF No. 38 at 3 (PageID.1579). But that question does not even describe the parties'

5

disagreement. The parties disagree about whether state law allows Defendants to force Catholic Charities to violate its religious beliefs when performing pre-referral activities—such as recruiting, training, studying, and recommending prospective parents—for which Catholic Charities is *not* reimbursed under the contracts. *Compare, e.g.*, Reply in Supp. of MPI at 2, ECF No. 25 (PageID.1366), *with* Defs' Resp. to MPI at 9–10, ECF No. 22 (PageID.935–936).

In any event, certification "lies within the sound discretion of the district court," *Pennington v. State Farm Mut. Auto. Ins. Co.*, 553 F.3d 447, 449–50 (6th Cir. 2009) (citation omitted), and is "not obligatory," *Glover v. Nationwide Mut. Fire Ins. Co.*, 676 F. Supp. 2d 602, 622 (W.D. Mich. 2009). As detailed below, there is no good reason for sending this case back to state court.

## A.    The state laws are straightforward and can be interpreted by this Court.

Despite removing this case to federal court, Defendants now believe "[t]he Michigan Supreme Court should have the first opportunity to interpret" the state's statutory protections for faith-based foster care and adoption providers. ECF No. 38 at 29 (PageID.1605). But federal courts "generally will not trouble [their] sister state courts every time an arguably unsettled question of state law comes across [their] desks." *Pennington*, 553 F.3d at 450 (cleaned up). And courts in this Circuit routinely deny certification requests

6

when "a reasonably clear and principled course of action exists," even when "the legal question is one of first impression." *State Auto Prop. & Cas. Ins. Co. v. Hargis*, 785 F.3d 189, 194 (6th Cir. 2015).

In *Sims Buick-GMC Truck, Inc. v. General Motors LLC*, 876 F.3d 182, 190 (6th Cir. 2017), for example, the Sixth Circuit held that a district court properly declined to certify the interpretation of an Ohio state law even though the Ohio Supreme Court had "never interpreted" that law. It was enough, the Sixth Circuit explained, that "Ohio contract and statutory interpretation precedent guided [the district court's] reasoned decision." *Id.*

The same path forward is available here—Michigan statutory interpretation precedent can lead to a reasoned decision from this Court. Like other courts, the Michigan Supreme Court's "goal in interpreting a statute is to give effect to the Legislature's intent, focusing first on the statute's plain language." *Malpass v. Dep't of Treasury*, 833 N.W.2d 272, 277 (Mich. 2013) (cleaned up). Michigan courts "examine the statute as a whole, reading individual words and phrases in the context of the entire legislative scheme." *Id.*

Applied here, these basic principles of statutory interpretation establish that Catholic Charities' understanding of Public Acts 53, 54, and 55 is correct. Without reiterating Catholic Charities' statutory analysis, *see* MPI Br. at 9–11, ECF No. 11 (PageID.608–610); Reply in Supp. of MPI at 1–2, ECF No. 25 (PageID.1365–1366), it suffices to say

that the Michigan Legislature enacted Public Acts 53, 54, and 55 to ensure "as many possible qualified adoption and foster parent agencies in [the] state" and to guarantee that faith-based providers like Catholic Charities remain "free[ ] to abstain from conduct that conflicts with [their] sincerely held religious beliefs." Mich. Comp. Laws § 722.124e(1)(c) & (e). Catholic Charities' interpretation of these laws gives effect to their plain meaning and purpose; the State's does not.

Indeed, under the State's view, the laws would be all but meaningless. The State contends that the laws do not protect faith-based agencies providing foster-care services through a government contract and that agencies with a contract may not "turn away an Applicant" for religious reasons. ECF No. 22 at 18 (PageID.932). But that includes *every* foster-care agency, as the *only* way to provide foster-care services in Michigan is through a contract and license with the State. *See* Slater Decl. ¶ 17, ECF No. 11-1 (PageID.633); *see also* Defs.' Answer ¶ 112, ECF No. 12 (PageID.666). What is more, the laws explicitly instruct an agency declining "any services" to "[p]romptly refer" the "applicant." Mich. Comp. Laws § 722.124e(4). Given these facts, the State's proposed interpretation is wrong.

In fact, while the parties currently disagree about whether Public Acts 53, 54, and 55 allow Catholic Charities to follow its religious beliefs when performing pre-referral activities and services such as recruiting, studying, and recommending prospective foster care and adoptive

parents, that was not always true. Until recently, the State interpreted the laws the same way Catholic Charities does. *See* Mot. to Dismiss at 25, *Dumont v. Lyon*, No. 2:17-cv-13080, ECF No. 16 (2:17-cv-13080 PageID.88) ("The people of Michigan chose to maximize child-placing-provider options when they passed legislation to continue Michigan's longstanding practice of contracting with faith-based [child-placing agencies] while ensuring that every person seeking to adopt has the ability to do so."). So did Attorney General Nessel—she declared the laws "a victory for the hate mongers," ECF No. 25-7 at 4 (PageID.1429), and said their "only purpose" was to allow faith-based foster care and adoption providers "to discriminate against people," ECF No. 25-6 at 3 (PageID.1425).

Even so, a mere disagreement about the laws' proper interpretation and scope does not justify certification. Courts reserve certification for complex and challenging legal questions, with the Michigan Supreme Court "rarely accept[ing] certified questions from the federal courts, and almost never accept[ing] them from the district court." *Glover*, 676 F. Supp. 2d at 621.

Because the laws are not "ambiguous," the State "may not properly ask a state court if it would care in effect to rewrite a statute." *City of Houston v. Hill*, 482 U.S. 451, 471 (1987). When, as here, a federal court "can resolve an issue of state law with available research materials already at hand," "[c]ertification is inappropriate." *Yates v.*

*Ortho-McNeil-Janssen Pharms., Inc.*, 808 F.3d 281, 293 n.1 (6th Cir.
2015); *accord Fid. Union Trust Co. v. Field*, 311 U.S. 169, 177 (1940)
("[I]t is still the duty of the federal courts, where the state law supplies
the rule of decision, to ascertain and apply that law even though it has
not been expounded by the highest court of the State.").

### B.   The First Amendment independently bars Defendants' new policy.

Certification is also improper because this Court could enjoin the
challenged policy without referencing state law. Catholic Charities
asserts constitutional claims under the First Amendment, and the Sixth
Circuit has declared that similar claims have "a likelihood of success on
appeal." Ex. 1, Order at 3.

Nor is Michigan state law "at the heart" of Catholic Charities'
federal constitutional claims, as Defendants contend. ECF No. 38 at 30
(PageID.1606). In *Buck v. Gordon*, No. 1:19-CV-286, 2019 WL 4686425
(W.D. Mich. Sept. 26, 2019), for example, the court temporarily enjoined
the State from enforcing its new policy against St. Vincent Catholic
Charities because the policy likely violated the First Amendment.
Although the *Buck* court criticized the State for disregarding Public
Acts 53, 54, and 55, it identified other factors "creat[ing] a strong
inference" of religious targeting: the State's sudden change of position
in the *Dumont* litigation and Attorney General Nessel's history of
making disparaging statements about the religious beliefs shared by St.

Vincent and Catholic Charities West Michigan. *Id.* at *10–11. Those same factors support Catholic Charities' First Amendment claims here.

## C.   Defendants removed this case to federal court and seek a return to state court only after adverse rulings by the Western District and the Sixth Circuit.

This Court should deny Defendants' certification motion for another reason: they voluntarily removed the case from state court. Although Defendants assert that removal does not weaken their request, *see* ECF No. 38 at 33–35 (PageID.1609–1611), the Sixth Circuit has held that courts "should be slow to honor a request for certification from a party who chose to invoke federal jurisdiction." *Local 219 Plumbing & Pipefitting Indus. Pension Fund v. Buck Consultants, LLC*, 311 F. App'x 827, 832 (6th Cir. 2009).

Other courts considering the issue have held the same. *See, e.g.*, *Passaro v. Virginia*, 935 F.3d 243, 252 (4th Cir. 2019) (certification inappropriate, in part, because "the [State] removed this case from Virginia state court, choosing to put the issue before the federal courts"); *Seaboard Sur. Co. v. Garrison, Webb & Stanaland, P.A.*, 823 F.2d 434, 438 (11th Cir. 1987) (declining request to certify because moving party could have litigated suit in state court but chose federal forum instead); *Colonial Park Country Club v. Joan of Arc*, 746 F.2d 1425, 1429 (10th Cir. 1984) ("[W]e note that the Country Club chose to file its case in federal court, and hence is in a somewhat awkward

11

position to now claim that the federal judge misunderstood the New Mexico law."); *Cantwell v. Univ. of Mass.*, 551 F.2d 879, 880 (1st Cir. 1977) ("[O]ne who chooses the federal courts . . . is in a peculiarly poor position to seek certification.").

Here, Defendants' request for certification comes more than eight months after removal and follows unfavorable rulings from the Western District and Sixth Circuit on virtually identical constitutional issues in *Buck v. Gordon*. As the Sixth Circuit has explained, certification is "disfavored" when a party selects "federal court and then, after an unfavorable judgment, 'seeks refuge' in a state forum." *City of Columbus v. Hotels.com, L.P.*, 693 F.3d 642, 654 (6th Cir. 2012).[3]

### D.   Certification would be inappropriate without a preliminary injunction.

Finally, this Court's rules about certification require a written finding that "certification of the issue will not cause undue delay or prejudice." E.D. Mich. LR 83.40(a)(3). Because the State's new policy

---

[3] *Accord Thompson v. Paul*, 547 F.3d 1055, 1065 (9th Cir. 2008) ("There is a presumption against certifying a question to a state supreme court after the federal district court has issued a decision."); *Enfield ex rel. Enfield v. A.B. Chance Co.*, 228 F.3d 1245, 1255 (10th Cir. 2000) (denying certification where party did not seek certification until adverse decision and stating "[t]hat fact alone persuades us that certification is inappropriate"); *Perkins v. Clark Equip. Co., Melrose Div.*, 823 F.2d 207, 209–10 (8th Cir. 1987) (discouraging requests for certification after an unfavorable decision because, "[o]therwise, the initial federal court decision will be nothing but a gamble with certification sought only after an adverse decision").

threatens Catholic Charities with cancellation of its foster care and adoption contracts, and thus its ability to keep serving Michigan's foster children, this Court cannot make such a finding in the absence of a preliminary injunction. A preliminary injunction should issue if the Court is inclined to certify the state law issue. *See, e.g.*, *Jones v. Coleman*, 848 F.3d 744, 754 (6th Cir. 2017) ("[W]hen the plaintiff has requested preliminary injunctive relief, a district court ought ordinarily to grant it when it abstains.").

## CONCLUSION

For these reasons, Plaintiff Catholic Charities West Michigan respectfully requests that this Court grant the motion to expedite and issue a preliminary injunction but deny Defendants' motion to certify.

Dated:  March 5, 2020                          Respectfully submitted,

                                               /s/ Jeremiah Galus
                                               Jeremiah Galus (AZ Bar 030469)
                                               Alliance Defending Freedom
                                               15100 N. 90th Street
                                               Scottsdale, AZ 85260
                                               (480) 444-0020
                                               jgalus@ADFlegal.org

13

## CERTIFICATE OF SERVICE

I hereby certify that on March 5, 2020, I caused the foregoing to be filed with the Clerk of the Court using the ECF system, which will provide electronic copies to counsel of record.

/s/ Jeremiah Galus
Jeremiah Galus (AZ Bar 030469)
Alliance Defending Freedom
15100 N. 90th Street
Scottsdale, AZ 85260
(480) 444-0020
jgalus@ADFlegal.org

14