UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CATHOLIC CHARITIES
WEST MICHIGAN,

    Plaintiff,

v.

MICHIGAN DEPARTMENT
OF HEALTH AND HUMAN
SERVICES; ROBERT GORDON,
in his official capacity as Director
of the Michigan Department of
Health and Human Services;
MICHIGAN CHILDREN'S
SERVICES AGENCY; JENNIFER
WRAYNO, in her official capacity as
Acting Executive Director of
Michigan Children's Services
Agency; DANA NESSEL, in her
official capacity as Attorney General
of Michigan,

    Defendants.
_____/

No. 2:19-CV-11661-DPH-DRG

HON. DENISE PAGE HOOD

MAG. DAVID R. GRAND

**REPLY BRIEF IN SUPPORT OF MOTION TO EXPEDITE AND TO CERTIFY THE QUESTION OF STATUTORY INTERPRETATION**

James R. Wierenga (P48946)
Attorney for Plaintiff
David, Wierenga & Lauka, PC
99 Monroe Ave., NW
Ste. 1210
Grand Rapids, MI 49503
(616) 454-3883
jim@dwlawpc.com

David A. Cortman (GA Bar #188810)
Attorney for Plaintiff
Alliance Defending Freedom
1000 Hurricane Shoals Rd. NE
Ste. D-1100
Lawrenceville, GA 30043
(770) 339-0774
dcortman@ADFlegal.org

Roger Brooks (NC Bar #16317)
Jeremiah Galus (AZ Bar #030469)
Attorneys for Plaintiff
Alliance Defending Freedom
15100 N. 90th Street
Scottsdale, AZ 85260
(480) 444-0020
rbrooks@ADFlegal.org
jgalus@ADFlegal.org

Toni L. Harris (P63111)
Elizabeth R. Husa Briggs
(P73907)
Attorneys for Defendants
Michigan Department of
Attorney General
Health, Education & Family
Services Division
P.O. Box 30758
Lansing, MI 48909
(517) 335-7603
HarrisT19@michigan.gov

# REPLY BRIEF IN SUPPORT OF MOTION TO EXPEDITE AND TO CERTIFY THE QUESTION OF STATUTORY INTERPRETATION

I. **An expedited decision denying Catholic Charities' motion for preliminary injunction correctly applies Michigan law and maintains the status quo.**

Years before Catholic Charities West Michigan filed this lawsuit, it signed contracts with the State, agreeing to comply with State law and with the terms of the State's adoption services contract and foster care management services contract, including the State's nondiscrimination policy. All child placing agencies must agree to the same neutral, generally applicable terms before accepting referrals of State-supervised children needing such services. (*See* Resp., Doc. 22, Page ID # 928.) During this time, Catholic Charities and the Michigan Department of Health and Human Services (MDHHS) maintained this status quo. When MDHHS received complaints that Catholic Charities failed to comply with the State's nondiscrimination policy by refusing to complete a child's adoption by a same-sex couple and by refusing to place siblings together where one lived with a same-sex couple, MDHHS investigated and required corrective action. (Resp., Doc. 22, Page ID ## 930-931.) And Catholic Charities complied, submitting corrective action plans to remedy the noncompliance. (*Id.*)

1

MDHHS's enforcement of its policy is consistent with state law. Child placing agencies can decline MDHHS's referral of a child needing foster care or adoption services, where such services conflict with its sincerely held religious beliefs. MCL 722.124f. After accepting a referral, however, agencies are contractually bound to provide State-contracted services in compliance with the State's nondiscrimination policy. *See* MCL 722.124e. They can refuse to provide private, direct placement adoption services that conflict with their sincerely held religious beliefs; but the law does not permit them to refuse State-contracted services for children accepted through MDHHS referrals. *Id*.

Catholic Charities now seeks to enjoin the State from complying with Michigan law and enforcing the terms of the contract, claiming that State law authorizes the agency to refuse State-contracted services that conflict with its religious beliefs. But Catholic Charities cannot – and did not – meet its heavy burden for the extraordinary relief it seeks. The fundamental premise of Catholic Charities' state and federal claims is its erroneous interpretation of state law. (*See* Motion, Doc. 38, Page ID ## 1601-1615.)

Catholic Charities' reliance on the Western District's decision enjoining the State from enforcing its nondiscrimination policy is misplaced. In *Buck v. Gordon*, the district court's non-binding opinion adopts the same misinterpretation of state law on which Catholic Charities relies, as does the Sixth Circuit in denying a stay.

Likewise, Plaintiff's reliance on the Second Circuit's decision in *New Hope Family Servs., Inc. v. Poole*, No. 19-1715 (2d Cir. Nov. 4, 2019) as support for granting a preliminary injunction is misplaced. In *New Hope*, the Second Circuit explained that the agency "does not provide [adoption] services pursuant to any contract with the State, nor does it receive any State funding." (Doc. 43-4, Page ID # 1871.) But Catholic Charities provides adoption and foster care services to State-supervised children *pursuant to contracts with the State* and receives State funding for such services. Now Plaintiff demands its own contract terms—different than all other agencies that contract with the State to provide *all* State-contracted services and receive public funding.

Moreover, while the Second Circuit determined that New Hope would suffer irreparable injury without an injunction, the court also found that the injunction would cause the defendant no serious injury due "in no small part to New Hope's agreement not to accept any new prospective adoptive parents for adoption services, thereby avoiding future disparate treatment of same-sex and unmarried couples relative to other prospective adoptive parents pending appeal." (*Id.* at Page ID # 1873.) Under these circumstances, the court granted an injunction providing relief different than the relief that Catholic Charities seeks or is willing to accept here. Specifically, the court allowed New Hope to continue reviewing already pending adoption applications, and recognized that "the public also has an interest in there being equal access to public services, but that concern is significantly reduced here by New Hope's agreement not to accept any new applicants for adoptive services pending this appeal." (*Id.* at Page ID ## 1873-1874.)

Unlike New Hope, Catholic Charities contracts with the State and receives public funding to provide adoption and foster care services to

State-supervised children. But Plaintiff does not seek the same relief granted in *New Hope*. Denying the injunction in this case is warranted because Plaintiff cannot demonstrate that it is likely to succeed on the merits of its claim – which hinges on its misinterpretation of state law.

The proper interpretation of state law is an important issue of state jurisprudence that the State's highest court should be first to decide. (Doc. 38, Page ID ## 1601-1611.) That the State removed this case to federal court does not diminish the importance of having the state law issue decided first. *Id*. at 1609-1611. The cases cited by Plaintiff support certification here. (Doc. 43, Page ID ## 1854-1855.) For example, in *Local 219 Plumbing v. Buck Consultants, LLC*, the Sixth Circuit confirmed that certification is "most appropriate when the question is new and state law is unsettled" and "before a District Court resolves the issue." 311 Fed. App'x 827, 831-32 (6th Cir. 2009).

## II. The U.S. Supreme Court's decision to review *Fulton* is further reason to grant Defendants' motion to certify the question of statutory interpretation to the Michigan Supreme Court.

On Monday, February 24, 2020, the Supreme Court granted certiorari in *Fulton v. Philadelphia*, 922 F.3d 140 (3d Cir. 2019), *cert*.

5

*granted,* --- S.Ct. ---, 2020 WL 871694 (U.S. Feb. 24, 2020) (No. 19-123). The Supreme Court's decision to review *Fulton, infra,* may impact Catholic Charities' federal claims, but not the state law issue underlying its state and federal claims. In fact, the Court's decision to review *Fulton* further supports certifying the state law question now.

In *Fulton*, the City of Philadelphia's Department of Human Services investigated a complaint that two of its agencies would not work with same-sex couples as foster parents, which if true would be considered a violation of the City's anti-discrimination laws. *Id.* at 146. The agencies confirmed that, because of their religious views on marriage, they would not work with gay couples. *Id.* Thereafter, Human Services stopped referring foster children to them. One of those agencies, Catholic Social Services (CSS), filed suit claiming that the City had violated its rights under the First Amendment's Free Exercise, Establishment, and Free Speech Clauses, and under Pennsylvania's Religious Freedom Protection Act. *Id.* CSS sought an order requiring the City to renew its contractual relationship with CSS, while permitting the agency to turn away same-sex couples seeking to become foster parents. *Id.* The court denied preliminary injunctive relief.

CSS appealed. The Third Circuit affirmed the district court's decision, concluding:

> The City stands on firm ground in requiring its contractors to abide by its non-discrimination policies when administering public services. Under *Smith*, the First Amendment does not prohibit government regulation of religiously motivated conduct so long as that regulation is not a veiled attempt to suppress disfavored religious beliefs. And while CSS may assert that the City's actions were not driven by a sincere commitment to equality but rather by antireligious and anti-Catholic bias (and is of course able to introduce additional evidence as this case proceeds), the current record does not show religious persecution or bias. Instead it shows so far the City's good faith in its effort to enforce its laws against discrimination. [*Id.* at 165.]

While the Supreme Court's decision in *Fulton* could determine a threshold constitutional question at issue in this case, the Court's decision has no bearing on the question of state law interpretation that is at the forefront of this case and should be decided first, as explained in Defendants' motion to certify (ECF No. 38). The Supreme Court's decision to hear *Fulton* is further reason to grant Defendants' motion to certify because the Michigan Supreme Court's interpretation of state law remains relevant regardless of the outcome in *Fulton*, and is not impacted by the *Fulton* decision. Moreover, because the Supreme

7

Court's decision in *Fulton* will not be issued for several months, certifying the question and waiting for an answer will not unduly delay a final decision on the merits in this case.

                                      Respectfully submitted,

                                      Dana Nessel
                                      Attorney General

                                      /s/ Toni L. Harris
                                      Toni L. Harris
                                      Assistant Attorney General
                                      Health, Education & Family
                                      Services Division
                                      P.O. Box 30758
                                      Lansing, MI 48909
                                      (517) 335-7603
                                      HarrisT19@michigan.gov
                                      P63111

Dated: March 11, 2020

## CERTIFICATE OF SERVICE (E-FILE)

I hereby certify that on March 11, 2020, I electronically filed the above document with the Clerk of the Court using the ECF System, which will provide electronic copies to counsel of record.

/s/ Toni L. Harris
Toni L. Harris
Assistant Attorney General
Health, Education & Family
Services Division
P.O. Box 30758
Lansing, MI 48909
(517) 335-7603
HarrisT19@michigan.gov
P63111