RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 20a0143p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

_____

| | |
|---|---|
| MELISSA BUCK, et al.,<br>                             *Plaintiffs-Appellees*,<br><br>ST. VINCENT CATHOLIC CHARITIES,<br>                             *Plaintiff-Appellee*,<br><br>     *v.*<br><br>ROBERT GORDON, et al.,<br>                             *Defendants*,<br><br>KRISTY DUMONT; DANA DUMONT,<br>                       *Amicae Curiae-Appellants*. | No. 19-1959 |

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 1:19-cv-00286—Robert J. Jonker, District Judge.

Argued: March 12, 2020

Decided and Filed: May 11, 2020

Before: GRIFFIN, WHITE, and NALBANDIAN, Circuit Judges.

_____

**COUNSEL**

**ARGUED:** Ann-Elizabeth Ostrager, SULLIVAN & CROMWELL, LLP, New York, New York, for Appellants. Nicholas R. Reaves, BECKET FUND FOR RELIGIOUS LIBERTY, Washington, D.C., for Appellees. **ON BRIEF:** Ann-Elizabeth Ostrager, Garrard R. Beeney, Leila R. Siddiky, Jason W. Schnier, James G. Mandilk, SULLIVAN & CROMWELL, LLP, New York, New York, Leslie Cooper, AMERICAN CIVIL LIBERTIES UNION FOUNDATION, New York, New York, Jay Kaplan, Daniel S. Korobkin, AMERICAN CIVIL LIBERTIES UNION FUND OF MICHIGAN, Detroit, Michigan, for Appellants. Nicholas R. Reaves, Lori H. Windham, Mark L. Rienzi, William J. Haun, BECKET FUND FOR

Case 2:19-cv-11661-DPH-DRG ECF No. 45-1 filed 05/12/20 PageID.1890 Page 2 of 11
Case: 19-1959 Document: 40-2 Filed: 05/11/2020 Page: 2

No. 19-1959     *Buck, et al. v. Gordon, et al.*     Page 2

RELIGIOUS LIBERTY, Washington, D.C., William R. Bloomfield, CATHOLIC DIOCESE OF LANSING, Lansing, Michigan, for Appellees.

_____

## OPINION

_____

GRIFFIN, Circuit Judge.

The State of Michigan finds itself in a tug-of-war between faith-based child placement agencies and same-sex couples who wish to foster or adopt children. In an earlier round of litigation, appellants Kristy and Dana Dumont claimed the State violated their First and Fourteenth Amendment rights by allowing faith-based child placement agencies to refuse them service based on their sexual orientation. Michigan settled that suit by agreeing to enforce a policy prohibiting discrimination on the basis of sexual orientation against faith-based child placement agencies. That settlement spawned this litigation. Plaintiff St. Vincent Catholic Charities claims the State violated its First and Fourteenth Amendment rights by directing it to perform its duties in a manner that violates its sincerely held religious beliefs.

This appeal deals not with the merits of the underlying constitutional dispute, but rather with whether the district court erred as a matter of law in denying the Dumonts' motion for intervention as of right or, in the alternative, whether it abused its discretion in denying their motion for permissive intervention. For the reasons explained below, we reverse the district court's order regarding permissive intervention and remand for further proceedings consistent with this opinion.

I.

A.

The Michigan Department of Health and Human Services (MDHHS) is responsible for the care of more than 13,000 children within the state foster-care system due to abandonment or neglect. It has opted to contract out the majority of its fostering and adoption services to private

child-placing agencies (CPAs). The State presently licenses and holds contracts with more than 50 private CPAs.

Before becoming eligible as a foster or adoptive parent in Michigan, a person must first obtain a license from the State. Private CPAs play a significant role in the licensing process by performing a home evaluation of the prospective parent(s). The home evaluation is "an exhaustive review of the family's eligibility" to act as foster or adoptive parents and requires the agency to assess "the relationships between all of the adults living in the home[.]" It includes both objective and subjective components and requires the CPA to make a final recommendation on whether or not the State should grant a license.

Some of the State's contracted CPAs are faith-based organizations, including plaintiff St. Vincent Catholic Charities.[1] Affiliated with the Catholic Diocese of Lansing, Michigan, St. Vincent is a Michigan non-profit corporation organized for charitable and religious purposes. It has provided fostering and adoption services for more than 70 years. St. Vincent shares the religious beliefs and teachings of the Roman Catholic Church regarding same-sex marriage. Therefore, it asserts that it "cannot provide a written recommendation to the State evaluating and endorsing a family situation that would conflict with [its] religious beliefs." It thus refers out home evaluations for same-sex or unmarried couples to other CPAs that do not share its religious beliefs.

Historically, MDHHS permitted St. Vincent to refer out cases that could pose a conflict with the agency's sincerely held religious beliefs. And in 2015, the Michigan Legislature codified this practice, enacting a statute designed to "[e]nsur[e] that faith-based child placing agencies [could] continue to provide adoption and foster care services" in line with their religious beliefs. *See* M.C.L. § 722.124e(1)(g) ("2015 Law"). It provides that "[t]o the fullest extent permitted by state and federal law, a child placing agency shall not be required to provide any services if those services conflict with, or provide any services under circumstances that conflict with, the child placing agency's sincerely held religious beliefs." § 722.124e(2).

---

[1]St. Vincent was originally one of four plaintiffs. However, the district court has dismissed the other plaintiffs, and that ruling is not yet appealable. We will thus refer to plaintiff in the underlying suit as "St. Vincent" for ease of reading.

Case 2:19-cv-11661-DPH-DRG ECF No. 45-1 filed 05/12/20 PageID.1892 Page 4 of 11
Case: 19-1959 Document: 40-2 Filed: 05/11/2020 Page: 4

No. 19-1959　　　　　　　　*Buck, et al. v. Gordon, et al.*　　　　　　　　Page 4

B.

After Michigan enacted the 2015 Law, the Dumonts filed suit in the United States District Court for the Eastern District of Michigan. *Dumont v. Lyon*, No. 2:17-cv-23080 (E.D. Mich. Sept. 20, 2017) ("the *Dumont* litigation"). They alleged that they were a same-sex couple interested in fostering and adoption, but that St. Vincent refused to assist them with the licensing process because of their sexual orientation. Based on this alleged discrimination, the Dumonts contended that MDHHS was violating their First and Fourteenth Amendment rights by permitting taxpayer-funded CPAs to use religious criteria to screen foster and adoptive parents.

St. Vincent successfully moved to intervene; indeed, the Dumonts did not oppose it. Both the MDHHS and St. Vincent then moved to dismiss the Dumonts' complaint, with St. Vincent raising its own constitutional rights as affirmative defenses to the Dumonts' claims. The district court denied both motions. *Dumont v. Lyon*, 341 F. Supp. 3d 706 (E.D. Mich. 2018).[2]

Michigan elected a new governor and a new attorney general in 2018. Thereafter, the State's position in the litigation changed and the State ultimately entered into a settlement agreement with the Dumonts in March 2019. In exchange for the Dumonts dismissing their constitutional claims with prejudice, the MDHHS agreed that "unless prohibited by law or court order," it would consider sexual-orientation discrimination by a faith-based child placement agency as violating the anti-discrimination clause under its existing contracts. St. Vincent was not included in the settlement discussions and is not a party to the agreement.

C.

St. Vincent commenced this lawsuit one month later in the United States District Court for the Western District of Michigan. It claimed that the State's shift in policy violated its First and Fourteenth Amendment rights, along with the Religious Freedom Restoration Act. And it sought to enjoin the defendants from enforcing the State's change in policy by terminating or suspending its contract.

---

[2]The court limited itself to addressing whether the plaintiffs had stated Establishment Clause and Equal Protection claims, consistent with Federal Rule of Civil Procedure 12, and expressly disclaimed any opinion on the affirmative defenses raised by St. Vincent and the other intervenor-defendants. *Dumont*, 341 F. Supp. 3d at 748–49.

Case 2:19-cv-11661-DPH-DRG ECF No. 45-1 filed 05/12/20 PageID.1893 Page 5 of 11
Case: 19-1959 Document: 40-2 Filed: 05/11/2020 Page: 5

No. 19-1959                    *Buck, et al. v. Gordon, et al.*                    Page 5

The Dumonts moved to intervene before any defendant filed an answer and requested expedited consideration under the district court's local rules. St. Vincent opposed the Dumonts' motion. Agreeing with St. Vincent, the district court denied the motion. On mandatory intervention, the district court reasoned as follows:

> The proposed intervenors rest their claim for intervention as of right on their interest in maintaining the Settlement Agreement. But that is an insufficient basis to support intervention as of right for at least two reasons. First, Plaintiffs are not asking for any relief directed at the Settlement Agreement itself. They do not seek to interpret its terms. Nor do they seek to invalidate any of its terms. From Plaintiffs' point of view, the Settlement Agreement is beside the point and irrelevant to the constitutional and statutory claims asserted. Second, the State is fully capable of protecting any interest the Dumonts have in the terms of the Settlement Agreement in any event. The State Defendants and the Dumonts are fundamentally aligned at this time in not only their views of the Settlement Agreement, but also their views of the merits (or more accurately, the demerits) of Plaintiffs' claims.

Regarding permissive intervention, the court observed:

> It is possible to imagine a basis for permissive intervention if the interests of the State Defendants and the proposed intervenors diverge; or if the Court grants some or all of the preliminary injunctive relief Plaintiffs seek in a way that potentially affects the Dumonts in some way it does not affect the State Defendants; or if later developments in the case create a basis for defenses or counterclaims – Establishment Clause theories, for example – that may be uniquely available to the Dumonts.

Despite recognizing this common question of law, the district court concluded that the Dumonts and the State were "aligned in all material respects" and that the Dumonts' "unique contribution" could be made as amici, rather than as parties to the suit. Thus, the court denied the Dumonts' motion to intervene without prejudice. The Dumonts then refiled their opposition to the motion for a preliminary injunction as an amicus brief in support of the defendants. They also timely filed this interlocutory appeal of the district court's denial of their motion for intervention.

Case 2:19-cv-11661-DPH-DRG ECF No. 45-1 filed 05/12/20 PageID.1894 Page 6 of 11
Case: 19-1959 Document: 40-2 Filed: 05/11/2020 Page: 6

No. 19-1959　　　　　　　　*Buck, et al. v. Gordon, et al.*　　　　　　　　Page 6

D.

Shortly after its rulings on the motion to intervene, the district court granted St. Vincent's motion for a preliminary injunction.**3** The State appealed the preliminary injunction and unsuccessfully sought a stay in our Court. *See Buck v. Gordon*, No. 19-2185 (6th Cir. Nov. 19, 2019). It then changed course and moved to dismiss the appeal, which we granted. *Buck v. Gordon*, No. 19-2185, 2020 WL 1862309 (6th Cir. Feb. 27, 2020). Back at the district court, St. Vincent moved to stay further proceedings pending the Supreme Court's decision in a case involving similar claims, *Fulton v. City of Philadelphia*. No. 19-123, 140 S. Ct. 1104 (2020) (granting certiorari). The district court granted the motion, reasoning that "*Fulton* is likely to illuminate and shape the legal standards controlling this case and may be outcome-determinative." Accordingly, the case has been stayed until the Supreme Court resolves *Fulton*.

II.

The only issues presented in this appeal are (1) whether the district court erred as a matter of law in denying the Dumonts intervention as of right, and (2) whether the district court abused its discretion in denying the Dumonts permissive intervention. Because we hold that the Dumonts "are entitled to permissive intervention, we address only those arguments." *League of Women Voters of Mich. v. Johnson*, 902 F.3d 572, 577 (6th Cir. 2018).

Federal Rule of Civil Procedure 24(b)(1) provides that, "[o]n timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." In deciding whether to allow a party to intervene, "the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). "So long as the motion for intervention is timely and there is at least one common question of law or fact, the balancing of undue delay, prejudice to the original parties, and *any other relevant factors* is reviewed for an abuse of discretion." *Mich. State AFL-CIO v. Miller*, 103 F.3d 1240, 1248 (6th Cir. 1997) (emphasis added).

---

**3**The Dumonts appeared through their counsel at the hearing on the motion and were allowed to present argument.

Case 2:19-cv-11661-DPH-DRG    ECF No. 45-1, filed 05/12/20    PageID.1895    Page 7 of 11
Case: 19-1959    Document: 40-2    Filed: 05/11/2020    Page: 7

No. 19-1959　　　　　　　　*Buck, et al. v. Gordon, et al.*　　　　　　　　Page 7

A.

Because the Dumonts timely moved to intervene,[4] we first examine whether they presented a common question of law or fact for resolution by the district court. They did.

St. Vincent maintains that the First and Fourteenth Amendments guarantee it the right to refrain from certifying same-sex couples for adoption. The Dumonts' position is the inverse; they claim that the State may not allow St. Vincent to turn away same-sex couples without violating prospective foster or adoptive parents' First and Fourteenth Amendment rights. There can be only one winner in this clash of constitutional guarantees, so the Dumonts have presented a common question of law that can be resolved by the district court. Even the district court recognized this, indicating that pending unspecified "later developments," the Dumonts could present defenses or counterclaims which were "uniquely available" to them. Specifically, it highlighted the Dumonts' invocation of the Establishment Clause as a potential affirmative defense to St. Vincent's claims.

St. Vincent resists this conclusion by contending that the Dumonts "do not even allege a claim or defense common to this action" and raise only "Michigan's claims or defenses for it." Appellee's Br. at 49; *see also id.* at 50 ("[The Dumonts'] proposed answer merely parrots that of the State Defendants, raising only defenses that would shield the State from liability."). The record says otherwise. The Dumonts have raised Establishment Clause and Equal Protection defenses that have not been asserted by the State. *Compare* Dumonts' Proposed Answer, R. 18-1 at PID 448 ("The relief requested by [St. Vincent] is barred by the Establishment Clause of the First Amendment of the United States Constitution.") *with* State Defendants' Answer, R. 77 at PID 2685–86 (raising no affirmative defense related to same-sex couples' constitutional rights).[5]

---

[4]There is no dispute that the Dumonts' motion was timely; they filed their motion at the very outset of the suit, before any defendant had filed an answer. (In fact, the motion to intervene was filed more than five months prior to any defendant answering the suit.).

[5]We also note that when St. Vincent intervened into the *Dumont* litigation, it was in the exact position the Dumonts are now. In other words, if the Dumonts raise "only Michigan's claims or defenses for it," as St. Vincent suggests, then the same was also true of its position in the prior case.

Case 2:19-cv-11661-DPH-DRG ECF No. 45-1 filed 05/12/20 PageID.1896 Page 8 of 11
Case: 19-1959 Document: 40-2 Filed: 05/11/2020 Page: 8

No. 19-1959　　　　　　　　　*Buck, et al. v. Gordon, et al.*　　　　　　　　　Page 8

Nor does *Kirsch v. Dean* support St. Vincent's no-common-ground-of-law position. 733 F. App'x 268 (6th Cir. 2018). There we discussed how permissive intervention is not appropriate where "a proposed intervenor . . . submit[s] a filing that 'substantially mirror[s] the positions advanced' by one of the parties." *Id.* at 279 (quoting *Bay Mills Indian Cmty. v. Snyder*, 720 F. App'x 754, 757–58 (6th Cir. 2018)). We then held that the district court did not abuse its discretion by denying an untimely motion for intervention, where the *sole* basis was the proposed intervenor's desire to have opposing counsel disqualified for an alleged violation of the attorney-client privilege. *Id.* at 279–80. There is no comparison to be drawn with *Kirsch*—the Dumonts asserted affirmative defenses the State forwent, while the *Kirsch* intervenors parroted the existing party's positions solely to have opposing counsel disqualified. *Id.*

B.

Having determined that the Dumonts' motion was timely and that it presented a common question of law, we turn to the remaining factors in Federal Rule of Civil Procedure 24(b)(3).

We begin with the risk of undue delay or prejudice to the existing parties. *Miller*, 103 F.3d at 1248; *see also* Fed. R. Civ. P. 24(b)(3) ("In exercising its discretion, the court *must* consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." (emphasis added)). But this is precisely where the district court went astray; it made no apparent effort to weigh the benefits of resolving the common question of law presented by the Dumonts against the risk of undue delay or prejudice to the original parties. This failure constitutes an abuse of discretion.

A "district court operates within a 'zone of discretion' when deciding whether to allow intervention under Rule 24(b)[.]" *League of Women Voters of Mich.*, 902 F.3d at 577 (quoting *Kirsch*, 733 F. App'x at 279). But that discretion has bounds—unless the basis for the decision is obvious from the record, the court must "provide enough of an explanation for its decision to enable us to conduct meaningful review." *Id.* (internal quotation marks and brackets omitted). Here, the district court's departure from Federal Rule of Civil Procedure 24(b)'s "must consider" language leaves us with a "definite and firm conviction that the trial court committed a clear error of judgment" warranting reversal. *See Tahfs v. Proctor*, 316 F.3d 584, 593 (6th Cir. 2003)

(citation omitted). And this is because the relevant factors weigh substantially in favor of permissive intervention.

Consider the benefits of resolving the legal question presented by the Dumonts in the same action as St. Vincent's claim. The core dispute between the Dumonts and St. Vincent has spawned at least three actions in federal district court, two appeals to our court, and one motion for certification of a question to the Michigan Supreme Court. No case has yet reached a final judgment on the merits. Absent intervention, these numbers are likely to increase. Strong interest in judicial economy and desire to avoid multiplicity of litigation wherever and whenever possible therefore supports permissive intervention.

We also discern no danger of undue delay or prejudice to the existing parties that would exceed the benefits of having both sides of this constitutional dispute litigated in a single action, either now or, more importantly, at the time the Dumonts moved to intervene. *See* Fed. R. Civ. P 24(b)(3); *see also* Wright & Miller, Federal Practice & Procedure, § 1913 (3d ed.) ("It has been said that this language is a caution to the Court so that in its zeal to avoid a multiplicity of suits it will not hamper or vex the claims of the existing parties." (internal quotation marks omitted)). Particularly because the case has already been stayed by the district court—on St. Vincent's motion—the Dumonts' intervention will not unduly prejudice St. Vincent. Nor do we find persuasive St. Vincent's speculation about protracted or unduly burdensome discovery if we allow the Dumonts to intervene. The Dumonts and St. Vincent have *already* engaged in substantial discovery in the *Dumont* litigation, cutting *against* a finding of undue delay or prejudice because the same facts are relevant to the case brought by St. Vincent. Moreover, were the Dumonts to abuse discovery after being allowed to intervene, the district court could resolve the dispute as necessary to meet the dictates of Federal Rules of Civil Procedure 26 and 37. *See* Fed. R. Civ. P. 26(b)(b)(1)–(2); Fed. R. Civ. P. 37.

Two other unique aspects of this case support our decision to reverse the district court's order regarding permissive intervention. First, the district court's decision to deny the motion to intervene without prejudice and to allow its renewal is difficult to square with Federal Rule of Civil Procedure 24(b). Timeliness of the motion is one of the primary factors. It makes little sense then to invite the Dumonts to renew their motion for intervention at some unspecified point

Case 2:19-cv-11661-DPH-DRG ECF No. 45-1 filed 05/12/20 PageID.1898 Page 10 of 11
Case: 19-1959 Document: 40-2 Filed: 05/11/2020 Page: 10

No. 19-1959    *Buck, et al. v. Gordon, et al.*    Page 10

in the future, when their motion will be less timely, and the case will have progressed to a point where undue delay or prejudice to the existing parties is more probable. *See League of Women Voters of Mich.*, 902 F.3d at 580. Second, the district court strayed too far from the legal standard set out in Federal Rule of Civil Procedure 24(b) by treating the dispositive issue as whether the Dumonts' and the State defendants' interests were "aligned." To be sure, "we have recognized that identity of interest is one of several 'relevant criteria' under Rule 24(b)." *Id.* (quoting *Coal. to Defend Affirmative Action v. Granholm*, 501 F.3d 775, 784 (6th Cir. 2007). But as explained above, their interests are not completely aligned. Moreover, by analyzing the identity of interests, and *not* the risk of undue delay or prejudice to the existing parties, which plainly favored the Dumonts, the district court applied the wrong standard.

St. Vincent's remaining arguments are unconvincing. It asserts that because the district court allowed the Dumonts to participate in the litigation as amicus parties, it did not abuse its discretion in denying the motion. But there is more at stake for the Dumonts "than just the opportunity to present argument to the district court." *Miller*, 103 F.3d at 1245. The Dumonts also "desire[] . . . the ability to seek appellate review." *Id.*; *see also Fidel v. Farley*, 534 F.3d 508, 512 (6th Cir. 2008) ("Generally, non-parties cannot appeal from an order of the district court, unless they have first sought leave to intervene as a party."). We have already seen this play out, as the Dumonts asserted at oral argument that they would not have abandoned the appeal of the preliminary injunction as the State did. Thus, the Dumonts' participation in the case as amicae does not shift the balance.

Nor do we find persuasive St. Vincent's assertion that permitting the Dumonts to intervene will open the floodgates to all same-sex couples who may wish to intervene. Permissive intervention has always been a discretionary decision, dictated by the particular circumstances of the case. The district court retains broad discretion to exclude additional parties—even parties presenting common questions of law or fact—based on the totality of the circumstances.

District courts are afforded wide latitude to determine whether a party with a common question of law or fact may join a particular suit. *See Miller*, 103 F.3d at 1248. But sometimes, a court steps outside its "zone of discretion," and thus abuses its discretion. *Id.* This is just such

No. 19-1959  *Buck, et al. v. Gordon, et al.*  Page 11

a case. The Dumonts filed a timely motion to intervene which raised a common question of law that was not outweighed by any countervailing factors, warranting permissive intervention. We therefore hold only that based on the unique facts and circumstances of this case, the district court abused its discretion by providing a cursory explanation of its denial of permissive intervention, failing to address the relevant legal factors or the unique circumstances of the case, and denying the motion without prejudice to be revisited in the future. Upon remand, "the district court retains broad discretion in setting the precise scope of intervention" going forward. *United States v. City of Detroit*, 712 F.3d 925, 933 (6th Cir. 2013).

III.

For these reasons, we reverse the denial of permissive intervention and remand to the district court for further proceedings consistent with this opinion.