UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CATHOLIC CHARITIES
WEST MICHIGAN,

    Plaintiff,

v.

MICHIGAN DEPARTMENT
OF HEALTH AND HUMAN
SERVICES; ROBERT GORDON, in
his official capacity as Director
of the Michigan Department of
Health and Human Services;
MICHIGAN CHILDREN'S
SERVICES AGENCY; JENNIFER
WRAYNO, in her official capacity as
Acting Executive Director of
Michigan Children's Services Agency;
DANA NESSEL, in her official
capacity as Attorney General of
Michigan.

    Defendants.

_____/

2:19-CV-11661-DPH-DRG

Hon. Denise Page Hood

Hon. David R. Grand

**NOTICE OF SUPPLEMENTAL AUTHORITY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**

James R. Wierenga (P48946)
Attorney for Plaintiff
David, Wierenga & Lauka, PC
99 Monroe Ave., NW
Ste. 1210
Grand Rapids, MI 49503
(616) 454-3883
jim@dwlawpc.com

David A. Cortman (GA Bar #188810)
Attorney for Plaintiff
Alliance Defending Freedom
1000 Hurricane Shoals Rd. NE
Ste. D-1100
Lawrenceville, GA 30043
(770) 339-0774
dcortman@ADFlegal.org

Roger Brooks (NC Bar #16317)
Jeremiah Galus (AZ Bar #030469)
Attorneys for Plaintiff
Alliance Defending Freedom
15100 N. 90th Street
Scottsdale, AZ 85260
(480) 444-0020
rbrooks@ADFlegal.org
jgalus@ADFlegal.org

Toni L. Harris (P63111)
Elizabeth R. Husa Briggs (P73907)
Attorneys for Defendants
Michigan Department of Attorney General
Health, Education & Family Services Division
P.O. Box 30758
Lansing, MI 48909
(517) 335-7603
HarrisT19@michigan.gov

_____/

# NOTICE OF SUPPLEMENTAL AUTHORITY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

Plaintiff Catholic Charities West Michigan submits this notice to alert the Court of the U.S. Supreme Court's recent decision in *Fulton v. City of Philadelphia*, No. 19-123, 2021 WL 2459253 (U.S. June 17, 2021), attached as Exhibit 1.

1

*Fulton* addressed one of the main issues in this case: whether the government violates the Free Exercise Clause by refusing to contract with a religious organization for foster care services unless the organization agrees to certify same-sex couples as foster parents in violation of its beliefs. The Supreme Court unanimously held that it does. This notice explains why the unanimous ruling supports Catholic Charities' pending motion for preliminary injunction. *See Lee v. McDonald*, No. 05-CV-60238-AA, 2008 WL 597287, at *1 (E.D. Mich. Mar. 3, 2008) ("The filing of such notices of supplemental authority has precedent in this district.").

**Substantial Burden.** First, *Fulton* makes clear that Defendants' purported nondiscrimination policy substantially burdens Catholic Charities' religious exercise.

Defendants have argued that their policy does not burden religion because it just asks Catholic Charities "to assess whether an Applicant meets legal licensing requirements, not to endorse any relationship." ECF No. 22, PageID.929. Not so. *Fulton* explains that because Catholic Social Services (CSS) sincerely believed "certification" was "tantamount to endorsement," the city was not just asking CSS to apply "statutory criteria." 2021 WL 2459253, at *4. Rather, it was putting CSS to the "choice of curtailing its mission or approving relationships inconsistent with its beliefs." *Id*. This made it "plain" that the city's actions substantially burdened CSS's religious exercise. *Id.* at *4. So too here.

2

**General Applicability.** Next, *Fulton* shows that the challenged policy is not generally applicable—and thus subject to strict scrutiny.

In *Fulton*, the city asserted that its nondiscrimination policy categorically prohibited CSS from declining to certify a same-sex couple as foster parents based on CSS's beliefs about marriage. But the relevant contract provision allowed exceptions at the city's "sole discretion." 2021 WL 2459253, at *5. This created "a system of individual exemptions," making the policy not generally applicable. *Id.* at 6. And it did not matter if the city had ever granted an individualized exemption; the Court held that the existence of a "formal mechanism for granting exceptions" alone destroyed general applicability. *Id.* at *7.

The same analysis again applies here. Like Philadelphia, Defendants insist that their foster care and adoption contracts categorically prohibit discrimination. But those contracts, like Philadelphia's contract, allow for exceptions. Child placing agencies may "decline the referral" of a child or individual for any reason. ECF No. 1-2, PageID.85, 141; *accord* ECF No. 22, PageID.942 (admitting an agency "may decline a referral of a child or individual in need of foster care and adoption services for any reason"). And even when agencies accept a referral, they can "refer the case *back* to the Department . . . upon the written approval of the County Director, the Children's Services Agency Director, or the Deputy Director." ECF No. 1-2,

3

PageID.85, 141 (emphasis added). This "written approval" is not based on any objective standards but given at the Department's discretion.[1]

To be sure, Defendants may say they refuse to grant any exceptions in practice, no matter what the contracts say. *See* ECF No. 22, PageID.935 ("No CPA can claim a religious exception"). But *Fulton* says that doesn't matter: "The creation of a formal mechanism for granting exceptions renders a policy not generally applicable, regardless whether any exceptions have been given." 2021 WL 2459253, at *7.

It also does not matter that the exception language and nondiscrimination provision are in separate sections of the contracts. *See id.* (rejecting same argument). As *Fulton* explains, the exceptions "also must govern" the nondiscrimination provision, lest the "reservation of the authority to grant such an exception be a nullity." *Id.*

Nor can Defendants evade *Fulton* by arguing that they do not refer prospective foster and adoptive parents, so that the "system of individual exemptions" applies only to referrals of children. *See* ECF No. 22, PageID.935 (suggesting this argument in footnote 3). Indeed, the contracts contradict that argument. Referrals are made for "foster care case management services" and "adoption services." ECF No. 1-2,

---

[1] The contracts' exceptions are required by state law. *See* Mich. Comp. Laws § 722.124e(2) (agency "shall not be required to provide any services" that conflict with its religious beliefs); *id.* § 722.124f(1) (agency may decline referral for "foster care case management or adoption services" if the services would conflict with its religious beliefs).

4

PageID.85, 141. And Defendants have said those services include the evaluation and certification of prospective foster and adoptive parents. *See* ECF No. 22, PageID.935. Moreover, the contracts explicitly reference the fact that MDHHS will make "referrals" of "relative caregivers" to agencies "for possible licensure of a foster family home." ECF No. 1-2, PageID.94.

In any event, referring only children (and stopping referrals of prospective parents) would not make the challenged policy generally applicable. Defendants cannot insist on nondiscrimination at one stage of the process (parent certification) yet completely disregard that purported interest at another (child referral). Said another way, Defendants cannot insist a faith-based agency certify a same-sex couple in violation of its beliefs while allowing another agency to decline a child referral because the child would be placed with a same-sex couple (e.g., when a relative would be first in line to foster or adopt the child). Because the latter situation "undermines the government's asserted interests in a similar way" to the former, such a policy would not be generally applicable. *Fulton*, 2021 WL 2459253, at *5.[2]

---

[2] The policy also is not generally applicable because it allows child placing agencies to assess prospective parents based on otherwise protected characteristics such as race, religion, gender, and marital status. *See* ECF No. 11, PageID.617-618; *Tandon v. Newsom*, 141 S. Ct. 1294, 1296 (2021) (policy is not "generally applicable . . . whenever [it] treat[s] *any* comparable secular activity more favorably than religious exercise").

Whether for a child or prospective parent, the decisive point is that an agency may decline the referral for any reason and may even send accepted referrals back to the Department upon written approval. Such a policy "invites the government to decide which reasons for not complying with the policy are worthy of solicitude." *Fulton*, 2021 WL 2459253, at *7. Strict scrutiny therefore applies.

**Strict Scrutiny.** Finally, *Fulton* shows that the challenged policy cannot survive strict scrutiny.[3]

Defendants say two compelling state interests justify any religious burden caused by their policy: (1) "ending invidious discrimination"; and (2) "maximizing the number of qualified foster and adoptive parents." ECF No. 22, PageID.943-44. But the city made the same two arguments in *Fulton*. Not one Justice found them compelling.

As for ending discrimination, the *Fulton* Court stated that courts cannot rely on "broadly formulated interests" but must "scrutinize the asserted harm of granting specific exemptions to particular religious claimants." 2021 WL 2459253, at *8. The question, then, is not whether the government has "a compelling interest in enforcing its non-discrimination policies generally, but whether it has such an interest in

---

[3] Besides its federal free-exercise claim, strict scrutiny also applies to Catholic Charities' other constitutional claims. And its free-exercise claim under the Michigan Constitution triggers strict scrutiny regardless of whether the challenged policy is neutral or generally applicable. *See* ECF No. 11, PageID.611-612.

denying an exception to [Catholic Charities]." *Id.* Thus, when "properly narrowed," the "asserted interests are insufficient." *Id.* at *9 (explaining that the system of exemptions "undermines" the "contention that its non-discrimination policies can brook no departures").

As for "[m]aximizing the number of foster families," the Supreme Court noted that was a worthy goal. *Id.* But it determined that granting a religious exception would not put that goal at risk. *Id.* "If anything," the Court explained, "including CSS in the program seems likely to increase, not reduce, the number of available foster parents." *Id.* The same is true here. As the Michigan Legislature has found, excluding faith-based providers like Catholic Charities does not further any compelling state interest; it only undermines it. *See* Mich. Comp. Laws § 722.124e(1)(c) & (f) (it is "a substantial benefit to the children" to have "as many possible" qualified agencies, and "faith-based . . . child placing agencies have a long and distinguished history of providing adoption and foster care services in this state").

| | |
|---|---|
| Dated: June 22, 2021 | Respectfully submitted,<br><br>/s/ Jeremiah Galus<br>Jeremiah Galus (AZ Bar #030469)<br>Alliance Defending Freedom<br>15100 N. 90th Street<br>Scottsdale, AZ 85260<br>(480) 444-0020<br>jgalus@ADFlegal.org |

7

## CERTIFICATE OF SERVICE

I hereby certify that on June 22, 2021, I caused the foregoing to be filed with the Clerk of the Court using the ECF system, which will provide electronic copies to counsel of record.

/s/ Jeremiah Galus
Jeremiah Galus (AZ Bar #030469)
Alliance Defending Freedom
15100 N. 90th Street
Scottsdale, AZ 85260
(480) 444-0020
jgalus@ADFlegal.org